F. P. SMITH, Defendant in Error, *vs.* WILLIAM H. GRAY, Plaintiff in Error.

*Opinion filed April 24, 1925.*

1. CONTRACTS—*when consideration for supplemental agreement is a question for jury.* In a suit on a contract for remodeling a building, whether or not there was a sufficient consideration for a supplemental agreement to pay the contractor an additional sum to erect a fire-escape to meet the approval of the city is a question of fact for the jury where the evidence is conflicting.

2. SAME—*a good consideration is sufficient.* A promise to do that which the promisor is already bound to do is not a sufficient consideration for an agreement, but the law merely requires in all contracts a good or a valuable and adequate consideration.

3. SAME—*when instruction on question of delay is erroneous— waiver.* In a suit on a contract for remodeling a building where no time was fixed for performance, the court should not instruct the jury that in considering the question of delay in performance they should consider only whether the plaintiff performed in a reasonable time after the date of a supplemental agreement, where it is a question of fact whether there was a sufficient consideration for the supplemental agreement and where the plaintiff relies upon performance of the entire contract in a reasonable time and does not plead the supplemental agreement as a waiver of prior delay.

4. SAME—*interest cannot be allowed for unliquidated counter-claims.* Where the defendant to a suit on a contract for remodeling a building sets up counter-claims of damages for unreasonable delay in the performance of the contract by the plaintiff, it is error to instruct the jury to compute interest on any such sums due the defendant, as such claims are unliquidated and depend upon the extent of the plaintiff's claim.

5. SAME—*general rule as to when interest is allowable on construction contract.* In a suit on an ordinary contract for labor and materials furnished in construction work, interest should be allowed from the time demand is made for payment after the completion of the work, or, if the parties make a settlement by agreement as to the final amount due, interest should be allowed from the date of such agreement; and the defendant, by setting up counter-claims of damages for unreasonable delay in completing the work, cannot defeat the plaintiff's right to interest in case such counter-claims are not established under the evidence.

6. SAME—*what necessary to show damages for delay in completing contract.* In a suit on a contract for remodeling or construction of a building, the defendant, who sets up counter-claims for damages arising out of unreasonable delay in the completion of the work by the plaintiff, must show that the building would have been put to use on a revenue basis during all of the time covered by the alleged delay.

7. SAME—*what testimony is admissible in suit on contract for construction.* In a suit on a contract for construction work it is proper to permit the plaintiff's manager to testify to a conversation he had with the defendant about the payment of the plaintiff's bill, in which the defendant made a remark which is in the nature of an admission and is no part of any negotiation for compromise.

8. APPEALS AND ERRORS—*when Appellate Court should not affirm on ground that substantial justice was done.* Where the Appellate Court is of opinion that the claim of plaintiff for extras should have been allowed by the trial court, it should not affirm the judgment on the ground that substantial justice was done because the trial court made an improper allowance of interest in substantially the same amount, as such action is a denial of the right to have the questions passed upon by the jury.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

RALPH B. GRAY, CHARLES R. YOUNG, and ARTHUR A. BASSE, for plaintiff in error.

DAVIS, RAMSAY, KELLY & KRACKE, (BRODE B. DAVIS, EDMUND P. KELLY, and CHARLES R. SERCOMB, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

F. P. Smith, trading as the F. P. Smith Wire and Iron Works, obtained a judgment in the municipal court of Chicago against William H. Gray for $3911.01 for labor and materials furnished under a written contract, including extras. The judgment was affirmed by the Appellate Court

on appeal, and this court awarded a writ of *certiorari* to review the judgment.

The contract sued on in this case is in two parts, in the form of letters addressed to Gray, plaintiff in error, (herein called defendant,) by defendant in error, F. P. Smith, (herein called plaintiff,) and signed by both parties, the first or original contract being dated May 2, 1916, and the second or supplemental contract September 27, 1916. By the original contract plaintiff agreed to furnish materials for, and to change according to requirements shown by the architect's drawing, the stairs on seven floors of the building known as the Board of Trade Hotel, the stairs from the second to the third floor to be new and the one from the basement to the second floor to be also new and constructed of plate and angle stringers, checkered steel treads and no risers, with pipe hand-rails where necessary. The work on the stairs was to be done on the basis of cost, plus ten per cent, and not to exceed $200 per floor, or a total of $1400 for the seven floors. Plaintiff was also to furnish three new Lally columns for the basement and put in eighteen elevator doors as specified, using present sills but furnishing all new materials for tracks, hangers, locks, etc.; also seven stair hall doors and one door on first floor corridor and one to alley, all made of materials as specified and to be three feet wide and seven high. Plaintiff was to have the option of furnishing pressed steel frames in place of the specified channel iron frames, furnish steel tops for two elevator cabs, four cast-iron thresholds for entrance doors, and include one three-foot stairway fire-escape but no stand-pipe,—all for the sum of $4600, erected. Payment was to be made by defendant on the 10th day of each month for eighty-five per cent of the work erected during the preceding month, from estimates furnished by plaintiff, the amount of each estimate to be mutually agreed on.

The second or supplemental contract, omitting date and signatures, is in this language: "In making the bid for

putting in the fire-escape on the northeast corner of the building, it was figured at $1235, which figure Mr. W. H. Gray agrees, in order not to delay the work further, to pay $2000 for, which will make a difference of $765 additional. F. P. Smith agrees to get proper permits from the city for building the same and furnish final inspection from the city." The work was to begin at once after the signing of the contract·but no time was fixed for its completion.

The contention of plaintiff is that he has performed the entire contract covered by the original and supplemental contracts; that he is entitled to recover the $4600 named in the original contract plus the $765 mentioned in the supplemental contract, and in addition thereto $568.81 for ten other items of extras agreed on and furnished from July 1, 1916, to November 23, 1916, making a total of $5933.81, less a cash payment of $2000 made by the defendant July 15, 1916. He also makes a further claim of $704.80 for interest up to July 28, 1920, the date of his affidavit of claim, together with all further interest that may accrue up to the rendering of final judgment.

The defendant filed an affidavit of merits, stating, in substance, that being about to remodel the Board of Trade building he engaged a reputable architect to prepare the necessary plans, drawings and specifications; that it was contemplated to open the hotel for business in July or August, 1916; that the plans, specifications and drawings were prepared and delivered to plaintiff in May, 1916, and contained the provision that the work upon the building was to begin on the date of the contract; that the plans and specifications and contracts included the erection and installation of a suitable three-foot stairway fire-escape upon the outside of the building to meet the approval and pass the inspection of the building department of Chicago; that prior to entering into the contract plaintiff made a careful examination of the plans and specifications and contracts and of the building to which the fire-escape was to be at-

tached; that but for the unreasonable delay of plaintiff in erecting the fire-escape the hotel could and would have been open for business at least two and a half months before it actually was, and that the delay was solely chargeable to plaintiff; that under the conditions then existing among contractors in Chicago, defendant was unable to secure the work to be done by any other contractors engaged in structural iron work, which plaintiff well knew; that plaintiff sought to compel defendant to pay for the fire-escape the additional sum of $765 named in the supplemental contract for its erection and charged it to defendant in his affidavit of claim as "extra steel for bracing walls;" that the extra steel for such purpose was never furnished and there is no consideration for the supplemental contract; that defendant frequently urged plaintiff to complete the erection of the fire-escape but he unreasonably delayed so doing and the same was not completed until November 27, 1916, to the damage of defendant in the sum of $9409.50, including $900 damage by delay to other work.

Defendant also filed what he calls a plea of set-off, which includes the $9409.50 damages included in his plea of recoupment. The former plea also includes a claim of $800 for about a ton and a half of brass removed from the elevator walls and claimed and taken by plaintiff and which defendant insists he was not entitled to under the contract; also $300 for plaintiff's share of cost of power and elevator service during construction and remodeling. In this plea of set-off are also included other items of overcharge by plaintiff amounting to $1486.95, for which defendant claims he is entitled to credit.

The work of repairing and remodeling the building on the inside was begun immediately after the signing of the original contract by the parties, and there is no claim that this work was not done according to the contract and without delay. The only question that defendant raises in the argument as to the charge for this work is, that as against

that claim he was entitled to a credit of $40 for door-stops not properly furnished, and which was practically conceded by plaintiff and apparently allowed by the jury; also, that he was entitled to a set-off for the value of the brass taken away from the building by plaintiff. Defendant further claimed that plaintiff was not entitled to interest.

The principal contention of defendant is that the supplemental contract of September 27, 1916, is void for want of sufficient consideration; that the additional charge of plaintiff of $765 for constructing the fire-escape cannot be recovered by plaintiff for said reason, and that by reason of the unnecessary delay in constructing the fire-escape defendant was greatly damaged and that he should be allowed the sum claimed by his pleas. The contention of plaintiff is that the brass in question was rightly his by reason of the provisions of the "specifications" from which he "figured the contract;" that he is not responsible for the delay in constructing the fire-escape; that there was a sufficient consideration for the supplemental contract; that the delay in constructing the fire-escape was not attributable to him but was caused by reason of the fact that the building department of the city of Chicago would not approve the plans agreed on by plaintiff and defendant for the construction of the fire-escape, necessitating extra material and work in constructing the same under the supplemental contract.

The substance of the plaintiff's evidence, as we understand it, is, that immediately after the contract was entered into he began making his shop drawings for the construction of the work by his men in accordance with the plans, specifications and drawings furnished him by defendant's architect and from which drawings he had figured the work. One of his workmen went to defendant's building to drill holes for anchors. When he drilled into the wall, which was of red pressed brick, he found it had a hollow center, and that the wall as constructed was not sufficiently strong to carry the fire-escape, and so reported to the draft-

ing department. This was the first knowledge that plaintiff had of this condition of the wall, and he at once stopped the drilling for the anchors. He then presented the plans and drawings for the fire-escape to the building department of the city, and the city refused to license or allow the fire-escape to be built on the wall as planned unless the wall was in some manner properly strengthened. Plaintiff reported this fact to defendant, who said he would look into the matter. Defendant and plaintiff for the next six or eight weeks or more undertook to agree on a plan by which the fire-escape could be built under the ordinances of the city. They discussed the matter with one another during this time and with the city authorities, and the final result of the conferences and discussions between plaintiff and defendant was the supplemental contract signed by both parties, in which plaintiff agreed for the extra amount to construct the fire-escape and to get proper permits from the city for building the same and furnish final inspection from the city. The evidence for plaintiff further tends to show that under the original plans and original contract the fire-escape was to be built on the wall in such a manner that the wall would be required to sustain its entire weight; that as finally constructed the fire-escape is in part or wholly supported by a different structure agreed on, which in part or wholly relieves the wall from bearing the weight of the fire-escape, and that such a structure required more steel and additional cost to plaintiff, which additional cost is the consideration for the supplemental contract. There is no question as to the fact that the city authorities approved the final construction agreed on, gave a proper permit for the building of the same and furnished final inspection certificates.

There is somewhat of a conflict in the evidence on the question whether or not the wall of the building sustains the entire weight of the fire-escape as finally constructed. Knowles, manager of one of plaintiff's departments, testified on this point that the extra steel re-inforcing does not

strengthen the wall of the building or the I-beams located in the wall; that a skeleton steel framework supports the fire-escape, and that the fire-escape, instead of being fastened to the wall, is supported by the framework. The witness Giaver testified for defendant that "the building supports the fire-escape entirely." Later he testified: "There is an angle-iron 4 x 4 supporting the pivot point of the balance stair at the first floor level. All the rest of the frames are hung on the building." Another witness for defendant (Hall) testified that "the fire-escape is supported from the walls of the building." Later he stated: "The fire-escape proper is not supported on the ground with the exception that the end of the counter-balance at the bottom is supported by about a 4-inch angle-iron strut. The cost of the angle-iron strut would not be over $3 or $4." Defendant testified: "The fire-escape is not supported from the ground. It is supported from the walls on the strut rods."

The wall of the building upon which the fire-escape was constructed belonged to defendant, and he was at least chargeable with as much knowledge of the weakness of the wall as was plaintiff. Plaintiff's evidence is to the effect that he had no knowledge of the defect in the wall until his employee drilled into it and informed him of its condition. In any view of the responsibility for the situation, if the city authorities refused to permit the parties to construct the fire-escape as originally planned because of the supposed defects in the wall, and the parties recognized the right of the city authorities to so refuse and agreed on another plan which the city approved and which necessitated a greater expense to plaintiff for steel in the construction of the fire-escape than as planned under the original contract, and entered into the supplemental contract requiring defendant to pay the additional sum of $765, then the supplemental contract is valid and supported by a sufficient consideration. This is so without regard to the question whether or not the additional steel and work required un-

der the supplemental contract strengthened the wall of the building and cost the full sum of $765. It cannot be questioned that plaintiff's evidence tended to prove that the supplemental contract was valid and supported by a valuable and sufficient consideration, even though his evidence was somewhat controverted by that of defendant. It is the law that a promise to do that which the promisor is already bound to do is not a sufficient consideration for such an agreement. (*Waters* v. *Simpson,* 2 Gilm. 570; *Stuber* v. *Schack,* 83 Ill. 191; *Havana Press Drill Co.* v. *Ashurst,* 148 id. 115.) The law merely requires in all contracts a good or a valuable and adequate consideration.

The lower court held as a matter of law that defendant waived any breach of the contract by reason of the delay in performance because of his signing the supplemental agreement. The jury were instructed that in determining whether or not there was an unreasonable delay in the performance of the contract they should determine from the evidence what was a fair and reasonable time to perform the contract after September 27, 1916, and if they found that there was such unreasonable delay after that time in constructing the fire-escape they should allow defendant as damages whatever they believed from the evidence to be a fair and reasonable rental for the premises during the time it was unreasonably delayed, if any. There is no question of waiver of the terms of the contract in this case. Plaintiff relied upon performance of the contract and did not plead a waiver or rely upon a waiver of the terms thereof. The instruction was therefore erroneous. (*Walsh* v. *North American Cold Storage Co.* 260 Ill. 322.) It is true that if the supplemental contract was a necessity, as already explained, and binding on both parties, there would be no basis for holding plaintiff responsible for the delay pending the negotiations leading up to the making of that contract. On the other hand, if, as contended by defendant, the supplemental contract is not supported by a sufficient considera-

tion, then it is a mere *nudum pactum,* and defendant waived nothing by being forced into making it, if he was so forced, and giving the instruction, on that theory, was error prejudicial to defendant, because he had a right, under his view of the case, to have the question of undue delay submitted to the jury and the question of his damages passed on. The court correctly held that under the terms of the contract, which did not fix any time for the completion of the work, the law fixed a reasonable time for its performance, but it must necessarily be a question of fact in this case, under the evidence, as to whether or not plaintiff was chargeable with the delay leading up to the signing of the supplemental contract.

The court also instructed the jury, in substance, that if they found from the evidence that plaintiff was entitled to recover any sum, then they should add interest at five per cent to such sum from the time they found such sum should have been paid under the contract, and that if, on the other hand, they found that any sum was due defendant, they "should compute interest at the rate of five per cent per annum on such sum." There was no legal theory upon which defendant could recover interest on any of his counter-claims. As to his counter-claim or recoupment for damages alleged to be sustained for unnecessary delay in constructing the fire-escape, he could only recoup, if at all, to the extent of plaintiff's claim for money due him. Such damages claimed by defendant are unliquidated damages, on which no interest is allowable under our statute. If he established his claim of set-off for brass taken by plaintiff, he could only use the amount of such claim as a set-off, without interest. The same is true for any credit or overcharge by plaintiff that he might establish. Such overcharge, if established, should merely be deducted from the amount of the claim of plaintiff as an amount plaintiff could not recover.

The Appellate Court held and found that none of the delay incident to the procuring of the permit for the building of the fire-escape could properly be charged to plaintiff; that the wall was defendant's wall and not plaintiff's; that plaintiff made every reasonable effort to expedite the matter and assist defendant in meeting the requirements of the department of buildings so that the permit could be issued, and that defendant had no basis for his claim for damages alleged to have been occasioned by the delay in the construction of the fire-escape. That court apparently also held that plaintiff was not entitled to recover interest on his claim, and that as he had recovered an amount of interest by the verdict of the jury that was equal to the $765 claim substantial justice had been done, and it overruled all other objections and affirmed the judgment.

We cannot agree with the view of the Appellate Court upon either of its theories as to the $765 claim or as to plaintiff's claim for interest. There were questions of fact that should have been settled by the jury in passing upon the $765 claim. If the special contract to pay the $765 was held valid under proper instructions, the Appellate Court would then be warranted in saying that all of the delay up to the signing of the supplemental contract was not chargeable to plaintiff. There was a conflict in the evidence as to whether or not there was a sufficient consideration for the supplemental contract, and as to whether or not it was secured by plaintiff as a mere hold-up of defendant and without any valuable consideration. The Appellate Court could not deny to defendant the right to have these questions of fact passed on by the jury, under the previous holdings of this court. (*People* v. *Lord,* 315 Ill. 603.) We think it is also true that if these facts are decided in favor of plaintiff there can be no question about his right, under our statute, to recover interest from the time demand was made on defendant by plaintiff after the contract was completed. The terms of the contract are: "Payment is to be

made on the 10th day of each month for 85% of the work erected during the preceding month. From estimates furnished by us [plaintiff] and checked by yourselves [defendant] amount of each estimate to be mutually agreed upon." Plaintiff demanded settlement of the final amount due, and the evidence shows that defendant refused to make settlement or to agree with plaintiff to make an estimate of any amount due. If they had come to a settlement and mutually agreed upon a final amount due plaintiff, then, under the very terms of the contract, such amount would have been payable at once and under our statute would draw interest from that date. The position taken by the defendant was that he owed plaintiff nothing and that he was damaged much more than plaintiff's claim. If defendant was wrong and his contention without merit he could not thus defeat plaintiff in his right to recover interest under our statute.

The second section of our statute on interest has this provision: "Creditors shall be allowed to receive at the rate of five percentum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." The contract in question is within the meaning of the words "other instrument of writing." This court has frequently held that where specific sums of money are to be paid for work by an agreement in writing, the several sums will, under the statute, carry interest from the time they become due. (*Heiman* v. *Schroeder,* 74 Ill. 158; *McDonald* v. *Patterson & Co.* 186 id. 381; *Palmer* v. *Meriden Britannia Co.* 188 id. 508; *Bauer* v. *Hindley,* 222 id. 319; *Dick Co.* v. *Sherwood Letter File Co.* 157 id. 325.) The holdings in the foregoing cases are to the effect that upon all such instruments in writing, including building contracts, interest is payable after the money becomes due according to the terms of the contract and after it has been substantially performed, even where the amount due is not stated in the writing and is undetermined. If the plaintiff in this case is entitled to recover under the facts as finally

established, there can be no question of his right to recover interest from the time of the demand on defendant and the wrongful refusal of the defendant to make settlement or an estimate of the final amount due, if he did so. If, on the other hand, the supplemental contract is without consideration and no recovery can be had thereon, then in such case the defendant had a right to refuse to make a settlement or estimate of any amount due plaintiff and to stand on his right to recover damages for the unusual delay in erecting the fire-escape and while he was being belabored by plaintiff for a supplemental contract to pay him money that he was not entitled to, if such be the fact. Upon this question we will further say, that in order for defendant to make good his claim for damages his evidence must show that he had a party ready to lease and pay him rent for the building as a hotel or for any other purpose, or that defendant himself was actually delayed in opening a hotel on his own account, to his damage. In other words, he must show that the hotel building would have been put into use on a revenue basis to the defendant during all the delay, as he seeks to recover on that assumption.

The trial court permitted plaintiff's manager to testify to a conversation he had at the Union League Club with defendant about the payment of plaintiff's bill. The witness in substance testified that he and defendant talked the matter over, and that defendant said he was willing to pay the bill except that he ought to have a deduction of $200 "on account of this steel work." Plaintiff refused to stand for reduction of his claim. We are of the opinion that this testimony was properly admitted because the alleged statement of defendant is in the nature of an admission and it was shown to be no part of a negotiation for compromise.

We are also of the opinion that other errors occurred in the progress of the trial in ruling on the competency of certain witnesses to testify as experts, and which are complained of by defendant. We do not deem it necessary to go into

detail or to make any special ruling thereon, as the questions will probably not arise on the next trial. As to the merits of defendant's claim for the brass taken from him by plaintiff this court is unable to make any determination because of the fact that both parties claim right or title to the brass by the provisions of the plans, specifications and drawings of defendant's architect, which are not abstracted in this case and so far as we know are not in the record. The drawings and specifications of plaintiff for the construction of the fire-escape under the first contract, and which plaintiff claims he made in accordance with the plans, specifications and drawings of defendant's architect, are also absent from the record, although they appear to have been introduced in evidence. The absence of these instruments has greatly handicapped the court in considering the case. Their absence is due to the negligence of the attorneys for both parties, for the failure, in the first place, of defendant's counsel to include an abstract of them in the case, and for the failure of plaintiff's counsel to do the same or give us the provisions thereof in some manner. It was also necessary to consider the plans and specifications made by plaintiff for the fire-escape under the supplemental contract and which were approved by the city authorities. No court can determine whether or not the contract first made by plaintiff for the construction of the fire-escape is the same or a different contract when modified by the supplemental contract, without the benefit of the exhibits which do not appear in the record. We may say generally, however, that we think there was competent evidence of the value of the brass to have been considered by the jury if defendant showed any right under said exhibit to recover for the same.

For the reasons aforesaid the judgments of the Appellate and the municipal courts of Chicago are reversed and the cause is remanded to the municipal court.

*Reversed and remanded.*