## LeRoy State Bank, Appellee, v. J. Keenan's Bank et al., Appellants.

### Gen. No. 8,185.

52

Opinion filed May 2, 1928. Rehearing denied June 18, 1928.

HERRICK & HERRICK, ADLAI H. RUST and STONE & TAYLOR, for appellants.

W. W. WHITMORE and SIGMUND LIVINGSTON, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This case involves an appeal from a judgment for $75,120.91, entered in the circuit court of McLean county against the appellants, and A. J. Keenan.

The suit is based upon the terms and conditions embodied in a written contract of guaranty, which was drawn up and executed in reference to the failure of the J. Keenan Bank of LeRoy; and the contract relates to the assumption of the liabilities of the J. Keenan Bank by the appellee, the LeRoy State Bank. The guaranty contract referred to is as follows:

(1) "Memorandum of Agreement entered into this 25th day of January, A. D. 1924, by and between the LeRoy State Bank of LeRoy, Illinois, party of the first part, and J. Keenan's Bank of LeRoy, Illinois, party of the second part, each of said parties being banking corporations, and A. Jay Keenan, L. C. Keenan, R. H. Roadman, D. F. Vandeventer, E. E. Sargent, C. J. Null, Hugo Pfitzenmeyer and Frank C. Barley, who now constitute the board of directors of the J. Keenan's Bank, and who, in this instrument, contract as individuals, parties of the third part.

(2) "Witnesseth: That the party of the first part agrees to assume and does hereby assume all liabilities of the party of the second part except its liability to its stockholders, which said liability assumed is shown by schedules hereunto attached, numbered 1 to 6, inclusive, and made a part of this agreement. As a part of said liabilities assumed shall be included interest upon such items up until the 25th day of January, 1924, in so far as the same shall be paid by the party of the first part.

(3) "Party of the second part agrees to transfer, and does hereby transfer, assign and set over all of the assets of the said J. Keenan's Bank, said assets being shown by exhibits hereunto attached and numbered 1 to 17, inclusive, and does agree to transfer by a good and sufficient warranty deed executed by the president and cashier of said bank, under the authority of a resolution of the board of directors of the said second party, the real estate of said second party, as shown in exhibit attached, the title to the same to be free and clear from encumbrances as shown by an abstract brought down to date, except taxes for the year 1923, which said first party agrees to pay and deduct from the purchase price of said building as hereinafter set forth, and party wall agreements, if any.

(4) "Parties of the third part, in consideration of the covenants and agreements of the party of the first part and party of the second part, as above set forth, do hereby covenant for themselves that they will, and do hereby fully guarantee the said party of the first part that the said assets so taken by it from said party of the second part shall be sufficient to liquidate the liability assumed by the said party of the first part.

(5) "Parties of the third part further covenant with party of the first part that said guaranty shall extend for a period of three (3) years, or such part thereof as may be necessary in order to enable the said party of the first part to liquidate the assets turned over to them to the extent that may be required to fully satisfy the liability assumed by the said party of the first part.

(6) "It is further understood by all of the parties hereto that the said first party shall have the right from time to time during the period of said guaranty to renew any or all bills receivable specified in said schedule, and that such renewal shall not operate to release or in any way discharge the guaranty of the parties of the third part, and upon its part in this con-

nection the party of the first part agrees that the parties of the third part shall have the right from time to time to make inquiry with reference to the bills receivable so turned over and as to progress made in their collection, and shall from time to time consult with the party of ,the first part with reference to the best methods of retiring the same, and the party of the first part further agrees that it will use its best efforts to collect and retire said paper in the usual course of business, to the end that the parties of the third part may, as soon as possible, be relieved from the guaranty thereon.

(7) "With this end in view, it is further agreed that the said J. Keenan's Bank shall nominate and appoint one representative to act upon their behalf in this connection, and that in event the result of the consultation between the parties shall be that they disagree as to the advisability of forcing collection upɔn any bills receivable, that question shall be submitted to the Auditor of the State of Illinois, whose determination of the question shall be final.

(8) "It is further understood and agreed that the said party of the first part shall open upon the books of the LeRoy State Bank an account to be known as the 'J. Keenan's Bank Account,' wherein shall be credited upon the one side the assets so turned over by said J. Keenan's Bank to the said first party, and be charged upon the other side with the amount of liabilities assumed by the said party of the first part as hereinabove set forth, and that from time to time as said bills receivable, or any part thereof, are collected, together with the interest upon the same up until the 25th day of January, 1924, or shall be renewed to the satisfaction of the party of the first part, the same shall be credited to the account of the said J. Keenan's Bank upon said account, and that in said account there shall be at once credited to the said J. Keenan's Bank the building, furniture, fixtures and

supplies at the fixed sum of forty thousand dollars ($40,000.00), less the amount of taxes assumed, as hereinabove specified.

(9) "It is further understood that whenever the sums collected from said assets, together with the fixed amount allowed for said building, as aforesaid, shall equal the liabilities assumed, that the guaranty of the parties of the third part shall be automatically discharged, and the party of the first part shall turn over to the said second party any remaining assets so scheduled, with the option upon the part of the party of the first part to retain any part thereof at the full face value or to retain any part upon an agreed valuation.

(10) "It is further agreed that at the expiration of the said three-year period of guaranty, if the assets turned over by the party of the second part to the party of the first part shall not have sooner liquidated the liability, as shown by the account above provided for, that the said parties of the third part will, upon demand, withdraw from said party of the first part, under the terms and conditions above provided, the remaining assets charged to the Keenan account and will forthwith pay in cash the sum of money necessary to liquidate the said liabilities assumed by the party of the first part.

(11) "It is further understood and agreed that in event it shall be necessary for the party of the first part, during the term of this guaranty, to expend any sums of money for the protection of any of the assets turned over by the party of the second part, that the sums of money so expended shall be charged against the account of the said party of the second part above provided for.

"This agreement is executed in duplicate the day and year first above written by the said parties of the first part and second part by their respective presidents and cashiers, and by the parties of the third part

in person, the parties of the first and second parts having been heretofore duly authorized to execute the same by action of the board of directors of the respective banks.

> LeRoy State Bank of LeRoy, Illinois, (Seal)
> > By W. F. Crumbaugh,
> > > President.
> > J. Keenan,
> > > Cashier.
> J. Keenan's Bank of LeRoy, Illinois, (Seal)
> > By A. Jay Keenan,
> > > President.
> > L. C. Keenan,
> > > Cashier.
> > > A. J. Keenan, (Seal)
> > > L. C. Keenan, (Seal)
> > > Frank C. Barley, (Seal)
> > > Hugo Pfitzenmeyer, (Seal)
> > > E. E. Sargent, (Seal)
> > > Chas. J. Null, (Seal)
> > > R. H. Roadman, (Seal)
> > > D. F. Vandeventer, (Seal)''

The main ground urged for reversal of the judgment and in defense of the liability of the appellants is that they "are guarantors only of the collectibility of the assets turned over; and that it was the duty of the appellee prior to the three-year period mentioned in the contract to exhaust all means of having said assets liquidated if it desired to make any claim against the appellants as guarantors." To determine the merits of this contention, it is necessary to construe the guaranty contract; and especially those parts of it which are embodied in paragraphs 4, 5, 6, 9 and 10, which must be considered together. In paragraph 4 the appellants expressly stipulate in consideration of the covenants and agreements of the appellee bank and of the J. Keenan's Bank, that they fully guarantee,

that the assets of the J. Keenan's Bank, taken over by the appellee bank "shall be sufficient to liquidate the liability assumed." And it may be pointed out in this connection, concerning the meaning of the word "liquidate," that this word must be considered as having been used in the ordinary and generally accepted meaning of the word when used in matters of business; and that using it in this sense it means to settle and pay off; to adjust and satisfy; and we conclude, therefore, that under paragraph 4 the appellants' guarantee is to the effect that the assets of the J. Keenan's Bank, turned over to the appellee bank, in consideration of its assumption of the liabilities of the J. Keenan's Bank, would be sufficient to pay off and satisfy the liability which the appellee assumed. It is provided by paragraph 5, that the guarantee embodied in paragraph 4, "shall extend for a period of three (3) years, or such part thereof as may be necessary in order to enable the appellee bank to liquidate the assets turned over to them to the extent that may be required to fully satisfy the liability assumed by the appellee." Paragraph 6 has reference to what the appellee bank shall have a right to do, and what shall be done by the appellee bank concerning the collection of the assets taken over; and it provides that the appellee bank shall have the right from time to time during the three-year period of guarantee, to renew any and all bills receivable, and that such renewal shall not operate to release or in any way discharge the guaranty. It also provides that the guarantors shall have the right from time to time to make inquiry with reference to the bills receivable turned over to the appellee bank, and as to the progress made in the collection thereof; and shall from time to time consult with the appellee bank, with reference to the best methods of retiring the same; and then the paragraph defines what the appellee bank agrees to do in reference to the collection and retire-

ment of the bills receivable turned over to it, namely: "That it will use its best efforts to collect and retire said paper in the usual course of business." Paragraph 9 provides that whenever the sums collected from the assets turned over to the appellee bank, meaning, of course, collected by the appellee bank, "in the usual course of its business" (together with the fixed amount of $40,000, less taxes assumed, for the bank building) shall equal the liabilities assumed, that the guaranty shall be automatically discharged, and the appellee bank shall turn back to the J. Keenan's Bank, the remaining assets; but an option is given the appellee bank to retain any part of the remaining assets at their face value or upon an agreed valuation. It is then stipulated in paragraph 10 that at the expiration of the three-year period or guaranty, if the assets turned over to the appellee bank "shall not have sooner liquidated the liability, as shown by the account provided for," that then the guarantors will upon demand withdraw from the appellee bank under the terms and conditions provided, "the remaining assets charged to the Keenan account and will forthwith pay in cash the sum of money necessary to liquidate the said liabilities assumed" by the appellee bank.

The foregoing provisions of the guaranty contract make it clear that the liability of the guarantors was not one which depended upon the collectibility of the assets turned over to the appellee, but involved an absolute promise to pay upon demand of the appellee at the expiration of the three-year period of guaranty, the sum of money necessary to liquidate the remaining liabilities assumed by the appellee; and to take back the assets charged to the Keenan account, which remained uncollected in the usual course of business. This guaranty contract was therefore an original undertaking and absolute in its character and effect, and was not dependent on some condition precedent which

would determine the liability of the guarantor, but the liability was definitely fixed in the terms of the contract. *Illinois Surety Co. v. Munro,* 289 Ill. 570; *Stowell v. Raymond,* 83 Ill. 120; *Dickerson v. Derrickson,* 39 Ill. 574; *Sherrard State Bank v. Vernon,* 243 Ill. App. 122; 28 Corpus Juris 895.

It is also contended by the appellants that it was legally necessary, to the right of the appellee bank to recover under the contract, that the appellee bank at the expiration of the three-year period make a tender to the appellants of the assets remaining unliquidated. Concerning this contention it may be pointed out that there is nothing in the contract with reference to the turning back of the remaining assets, except what appears in paragraph 10; and the provision in paragraph 10 requires that the action to be taken concerning the remaining assets is to be taken by the appellants; that is to say, that upon a demand as was made by the appellee bank under the paragraph mentioned the appellants shall withdraw the remaining assets and pay in cash the sum of money necessary to liquidate the same. The obligation to withdraw the remaining assets does not depend on a tender by the appellee bank, and we conclude therefore that a tender was not necessary.

It is also contended that the appellee bank did not use due diligence in and about the collection, retirement and liquidation of the assets taken over. Concerning this contention, it is evident under paragraph 6 of the contract the appellee bank was obligated only to collect and retire the assets assumed, and to the exercise of its best efforts in the collection thereof in the due course of its business; and the appellee bank was given full power and discretion to renew any and all the commercial paper constituting such assets during the period of guaranty; and that a renewal instead of a collection of such paper should not operate as a release or discharge of the guaranty. There is no

evidence in the record of any facts showing that the appellee did not comply with the requirement of using its best efforts in the collection of the assets in due course of its business in accordance with the terms of the contract.

It is also argued that the appellee's right of recovery is based on the condition of the account which the contract provides should be kept by the appellee bank, and that the amount of the liability of the appellants, if any, must be fixed by the account mentioned. The account referred to and the agreement in regard to the account apears in paragraph 8 of the contract, as follows: "It is further understood and agreed that the said party of the first part shall open upon the books of the LeRoy State Bank an account to be known as the 'J. Keenan's Bank Account,' wherein shall be credited upon the one side the assets so turned over by said J. Keenan's Bank to the said first party, and be charged upon the other side with the amount of liabilities assumed by the said party of the first part as hereinabove set forth, and that from time to time as said bills receivable, or any part thereof, are collected, together with the interest upon the same up until the 25th day of January, 1924, or shall be renewed to the satisfaction of the party of the first part, the same shall be credited to the account of the said J. Keenan's Bank upon said account; and that in said account there shall be at once credited to said J. Keenan's Bank the building, furniture, fixtures and supplies at the fixed sum of forty thousand dollars ($40,000.00), less the amount of taxes assumed, as hereinabove specified." There is no contention that an account was not kept, but that such account was not kept in the particular way which the contract specifies. In reference to the keeping of an account attention must be called to the fact that the amount of liability of the appellants, if any, could not have been accurately ar-

rived at, if the account had been kept in the particular way referred to in the contract, for it provides that on one side of the account there shall be credited the assets turned over to the appellee; upon the other side of the account should be charged the liabilities assumed by the appellee. Then there shall also be entered on the credit side, from time to time, the bills receivable (which were a part of the assets), as they were collected, with interest thereon up to and until January 25, 1924; and there should also be credited the bills receivable which were renewed to the satisfaction of the appellee bank; that is to say, on the one side of this account there would be the charge of the amount of the liabilities assumed by the appellee bank, and as against those liabilities assumed, there would be entered the following credits: First, the amount of all the assets turned over by the Keenan Bank; then the amount of the bills receivable which were collected and which were a part of these assets, together with the interest thereon to January 25, 1924; also the amount of the bills receivable which were not collected but renewed would be credited, as well as the $40,000 for the bank building, furniture, etc., which were a part of the assets taken over, should be specially credited. Under this arrangement of credits in the account to be kept as specified, there would be a doubling or tripling of credits against the liabilities assumed by the appellee bank; and it is difficult to perceive how an accurate understanding of the liability of the appellant could have been arrived at if the account had been kept in the particular way required. It is not contended, however, that a true and accurate account of the collections made by the appellee bank and of the pecuniary transactions and business dealings of the appellee bank with reference to the assets was not kept by the appellee bank; and the books containing the accounts of the transactions which were brought into court and used in

evidence upon the trial are not accurate and true. But we deem it sufficient to say, concerning the matter, that the contract does not provide that the right of recovery against the appellants, if any there be, shall be determined by the condition of the account of the J. Keenan's Bank as kept in the manner provided for in the contract.

Another question raised by the appellants relates to the competency of the testimony of the expert accountants, who were called as witnesses for the appellee bank. Concerning this contention it may be said that where witnesses are familiar with the books, papers and assets of an estate, and are possessed of special knowledge from an examination of such books, papers and assets, they are competent witnesses as to such matters. *People v. Hartenbower,* 283 Ill. 591; *Chicago & W. I. R. Co. v. Heidenreich,* 254 Ill. 231; *People v. Gerold,* 265 Ill. 448; *People v. Munday,* 280 Ill. 32; *Reinke v. Sanitary Dist. of Chicago,* 260 Ill. 380; *Smythe v. Evans,* 209 Ill. 376.

In *Smythe v. Evans,* above cited, the court said: "These books are competent evidence. It is also proper, for the convenience of the jury, to take the evidence of a bookkeeper, accountant or other person skilled in work of that character, to show the footing of a column of figures or to show the result of any calculation from a complicated set of figures which cannot be readily carried in mind by the jury, where the calculation is purely mathematical."

It is further contended that it was error to enter a judgment against the appellant L. C. Keenan without first defaulting him, because he did not join with the other appellants in the court below in the pleadings filed in defense of the action, that because of this fact there was no issue to try concerning him. It is sufficient to say, concerning this point, that appellant L. C. Keenan was represented by counsel in the case, and participated in the trial, which trial was on the merits.

in the same way as the other appellants; and participated in the same way as if he had joined in the pleadings filed by his coappellants. The law is well settled that if parties proceed to a trial without a plea, or without having formally joined issues, this irregularity is waived and cured by the verdict. *Brassle v. Usher*, Breese 35; *First Nat. Bank of El Paso v. Miller*, 235 Ill. 135; *Devine v. Chicago City Ry. Co.*, 237 Ill. 278; *Hinchcliffe v. Wenig Teaming Co.*, 274 Ill. 417; *Farley v. Dean*, 196 Ill. 389. In this connection attention should also be called to the fact that no objection was raised in the trial court to the irregularity referred to; and that the objection cannot properly be raised in a court of review for the first time. *Devine v. Chicago City Ry. Co., supra.*

Another contention of appellants is that the sum of $3,293.35, was received by the appellee bank as interest for the time extended for payment of the renewed bills receivable; and that this interest under the guaranty contract should be regarded as payment of part of the principal of the bills receivable renewed; and that therefore appellants are entitled to credit for the amount of this interest on their indebtedness. In reference to this contention it may be said that the contract gives the appellee bank full and complete power and discretion and right to renew any and all bills receivable from time to time during the three-year period of guaranty without prejudice to their right to recover under the guaranty contract, and that there is nothing in the contract under which the appellants are entitled to credit for such interest accruing for such renewals; but the only interest specified in the contract for which the appellants are entitled to receive credit is the interest on the bills receivable accruing "up until the 25th day of January, 1924."

Complaint is also made about the instructions given by the court in reference to a credit of $621.32, which the court directed the appellants were entitled to out

of the money which the appellee bank collected from W. T. Phillips. The evidence discloses, concerning this collection, that among the assets which the appellee bank took over, there was a claim against Phillips, who was engaged in farming, for $1,450. Phillips had been and was at the time of the turning over of the assets unable to pay this indebtedness; apparently also he was unable to continue his farming operations without some additional financial aid; and he had no other way of paying his indebtedness except by continuing his farm operations. In this situation the appellee bank loaned him additional money in the regular course of business, which amounted in all to $1,378; and thereafter took a chattel mortgage on his personal property to secure the amount loaned him by the appellee bank and also the amount of his indebtedness to the Keenan Bank. Afterwards the appellee bank thought it necessary to foreclose the chattel mortgage, and the net amount realized from the foreclosure sale was $1211.80. There is nothing in the evidence to indicate that the appellee bank did not handle the whole matter in good faith, and for the best interest of all concerned, nor that it did not exercise good judgment. The court instructed the jury that the amount realized by the foreclosure should be divided pro rata between the Keenan indebtedness and the amount due the appellant bank for the additional loans made Phillips. By the pro rata division the appellants received the larger part of the amount realized in the foreclosure of the chattel mortgage, and the division made by the court appears to be fair and just to the appellants.

It is also urged by the appellants, for reversal of the judgment, that A. J. Keenan, who is a party defendant, but who was not served with process, is included in the judgment. It is pointed out that the trial court had no jurisdiction of this defendant at the time of the rendition of the judgment. The appellee bank insists that A. J. Keenan was represented on the trial of the case

by counsel, and by the same counsel that represented
the appellants; and it is asserted that the record shows
that a demurrer to the declaration was filed in the case
in behalf of all the defendants except Frank C. Barley;
and that a motion was made for a more specific bill of
particulars on behalf of all the defendants except
Frank C. Barley; and that the entry of appearance on
the trial on the merits was for all the defendants; that
all objections which were made to matters of evidence
were expressly made on behalf of all the defendants;
and a motion to strike out certain evidence adduced on
the trial was made by counsel on behalf of all the de-
fendants jointly and severally. A. J. Keenan, how-
ever, did not join the appellants in this appeal, and we
have no jurisdiction on this appeal to determine ques-
tions concerning A. J. Keenan's rights or liabilities in
connection with the judgment rendered. And the ap-
pellants are not in position to assign error for him,
inasmuch as the rendition of a judgment against
Keenan for lack of jurisdiction would be an error com-
mitted against him alone. *Schwartz v. Ritter*, 186 Ill.
209; *Press v. Woodley*, 160 Ill. 433; *City of Chicago v.
Cameron*, 120 Ill. 447; *Gage v. Du Puy*, 134 Ill. 132;
*Pierson v. Hendrix*, 88 Ill. 34; *Robinson v. Brown*,
82 Ill. 279; *Crawford v. Eastman*, 150 Ill. App. 241,
242; *Harrison v. Thackaberry*, 154 Ill. App. 246, 249.

The record does not disclose any substantial error
in the admission or exclusion of evidence on the trial,
nor do we find any error in the giving or refusal of
instructions. The instructions were given or refused
in reference to the main issue in the case and in con-
formity with the holding of the trial court as to the
nature and effect of the guaranty obligations of the
appellants under their contract; and this holding is in
harmony with the views expressed in the foregoing
opinion. The jury were warranted by the evidence,
under the instructions of the court, to find the amount
of damages for which the appellants are liable to be

$77,321.15. It was stipulated, however, by the parties, after the rendition of the verdict, that since the taking of the evidence in the case, the appellee bank had collected additional sums from the assets remaining in its hands, which amounted to a sum total of $2,414.94; and that this sum should be credited on the amount of damages fixed by the verdict, which was done, and the judgment was therefore rendered for the reduced amount. It was also agreed that the application of the credit referred to should not in any manner prejudice the rights of either of the parties concerning the questions raised on appeal.

For the reasons hereinbefore set forth, the judgment is affirmed.

*Judgment affirmed.*