LeRoy State Bank, Appellee, v. J. Keenan's Bank et al., Appellants.

Gen. No. 8,475.

442

Opinion filed April 14, 1931.

HERRICK & HERRICK and STONE & TAYLOR, for appellants.

W. W. WHITMORE and SIGMUND LIVINGSTON, for appellee; LEDERER, LIVINGSTON, KAHN & ADLER, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This case is here on a second appeal. On the first trial this court affirmed a judgment in favor of appellee in the sum of $75,120.91. (253 Ill. App. 51.) The Supreme Court granted a certiorari and the opinion of that court is reported in 337 Ill. 173. The history of this litigation appears fully in the above opinions and need not be repeated here.

This suit is based upon a tripartite contract wherein the LeRoy State Bank was party of the first part, J. Keenan's Bank party of the second part and eight individual directors of the latter bank were parties of the third part. This contract is set out fully in our former opinion but in order to discuss some of the errors assigned it is convenient if not necessary to restate a portion thereof as follows:

"Memorandum of agreement entered into this 25th day of January, A. D. 1924, by and between the LeRoy State Bank of LeRoy, Illinois, party of the first part, and J. Keenan's Bank of LeRoy, Illinois, party of the second part, each of said parties being banking corporations, and A. Jay Keenan, L. C. Keenan, R. H. Roadman, D. F. Vandeventer, E. E. Sargent, C. J. Null, Hugo Pfitzenmeyer and Frank C. Farley, who now constitute the board of directors of J. Keenan's Bank and who in this instrument contract as individuals, parties of the third part:

"Witnesseth: That the party of the first part agrees to assume, and does hereby assume, all liabilities of the party of the second part except its liability to its stockholders, which said liability assumed is shown by schedules hereunto attached numbered 1 to 6, inclusive, and made a part of this agreement. As a part of said liabilities assumed shall be included interest upon such items up until the 25th day of January, 1924, in so far as the same shall be paid by the party of the first part.

"Party of the second part agrees to transfer, and does hereby transfer, assign and set over, all of the

assets of the said J. Keenan's Bank, said assets being shown by exhibits hereunto attached and numbered 1 to 17, inclusive, and does agree to transfer by a good and sufficient warranty deed executed by the president and cashier of said bank under the authority of a resolution of the board of directors of the said second party, the real estate of said second party as shown in exhibit attached, the title to the same to be free and clear from encumbrances as shown by an abstract brought down to date, except taxes for the year 1923, which said first party agrees to pay and deduct from the purchase price of said building as hereinafter set forth, and party wall agreements, if any.

"Parties of the third part, in consideration of the covenants and agreements of the party of the first part and party of the second part as above set forth, do hereby covenant for themselves that they will, and do hereby fully guarantee the said party of the first part that the said assets so taken by it from said party of the second part shall be sufficient to liquidate the liability assumed by the said party of the first part.

"Parties of the third part further covenant with party of the first part that said guaranty shall extend for a period of three (3) years, or such part thereof as may be necessary in order to enable the said party of the first part to liquidate the assets turned over to them to the extent that may be required to fully satisfy the liability assumed by the said party of the first part."

After the cause was remanded to the trial court by the Supreme Court appellants asked leave to file the plea of *non est factum* which was denied and this ruling of the court is assigned as error. The contract provides that the liabilities assumed by the LeRoy State Bank are those shown by schedules attached to the contract numbered 1 to 6 inclusive and made a

part thereof. The contract also provides that the assets to be assigned to the LeRoy State Bank by J. Keenan's Bank were such as were shown by exhibits thereunto attached and numbered 1 to 17 inclusive. It is now claimed that, as a matter of fact, the aforesaid schedules of liabilities and assets were never attached to the contract and therefore there never was any execution of the contract and that appellants had the right to present that issue. This contention cannot be sustained for several reasons. During the three-year period of liquidation of J. Keenan's Bank by the State Bank of LeRoy all parties to the contract acted as if said schedules were a part of and attached to the contract and appellants received the benefits of the contract. The contract itself was recognized on the former trial in the trial court as a valid contract, also in this court and in the Supreme Court and appellants solicited a construction of said contract which was given both by this court and the Supreme Court. These schedules were at all times treated by all parties to the contract as having been attached to the contract. The Supreme Court said, ''Attached to this contract were the seventeen schedules referred to in it showing the assets and liabilities of J. Keenan's Bank,'' and then proceeds to set out the items of the assets mentioned in the schedules. It was held in the case of *Stevenson v. Stevenson,* 297 Ill. 338, that a party to an action having taken a position that devises in a will are invalid for misdescription will not be allowed on second trial, after obtaining reversal of the decree upholding the will, to change their position entirely and file an amended answer asking the court to sustain the will as to them on the ground that the testator put them in possession of the land on the promise to devise it to them and that they have made leases and valuable improvements thereon. In the case of *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150, it was held that where

a cause was submitted to the Supreme Court upon a certain theory by both parties to the controversy one of the parties upon a petition for a rehearing would not be allowed to submit the issues upon another theory. In the case of *Doyle v. Sanford,* 26 Ill. App. 156, it was held that in a proceeding to redeem certain mortgaged premises, wherein complainant was defeated upon the first appeal on the question of claiming the benefit of the usury statute, he could not, upon a second appeal, rely upon the claim of tender since the two claims are inconsistent. Appellants having acted throughout the period of liquidation on the theory that the schedules mentioned were a part of the contract and having recognized them as such, and having presented that theory to the trial court, to this court and to the Supreme Court and having obtained a construction of the contract and of their rights thereunder are now estopped from claiming that the contract was never completed because the schedules mentioned therein were never attached thereto.

On March 22, 1930, the court granted a continuance of this cause upon motion of appellants on the ground of the sickness of R. H. Roadman, one of the parties defendant. On May 8, 1930, appellants again filed a motion for a continuance upon the same ground and in the affidavit filed in support of the latter motion it was set forth:

"That said Roadman was a material witness and that if called would testify to the effect that the purported contract was not the contract signed and executed by him, that he executed a portion of said contract upon the agreement and understanding that schedules listing all the assets of J. Keenan's Bank would be attached thereto and become a part thereof before delivery; that the plaintiff would take over all of the assets of J. Keenan's Bank and would assume all the liabilities; that the purported schedules and exhibits mentioned in the declaration as a part of

said alleged contract did not contain all of the assets and liabilities as agreed upon when the contract was executed; that the said issue would be controverted and the evidence conflicting, and that if defendants are deprived of the testimony of Roadman their cause will be greatly prejudiced, that there is no other person or persons by whom defendants can so fully prove the facts to which said Roadman would testify if present.''

The court denied the motion. From what we have heretofore said, the facts set forth in the affidavit as to which Roadman would testify would have been incompetent and irrelevant and it was not error to overrule the motion for a continuance.

Numerous books of account and other documents pertaining to the collection of the assets and the payment of the liabilities were introduced in evidence and it is claimed that this was error on the ground that they were incompetent. We held in our former opinion that such books of account were competent evidence and that question as a general proposition is *res adjudicata*. On the former trial of the case and in this case expert accountants, from an examination of said books and documents, testified as to the results reached by them from such examination. In passing upon the evidence of the expert accountants who testified on the former trial the Supreme Court held: ''While the material contents of an existing book of original entry which is obtainable cannot be proved by parol testimony, because the book is the best evidence, yet where the originals consist of numerous documents, books, papers or records which cannot conveniently be examined in court and the fact to be proved is the general result of the whole collection, any competent witness who has examined the originals may testify as to such result, provided it is capable of being ascertained by calculation. (*Inter-State Finance Corp. v. Commercial Jewelry Co.*, 280 Ill. 116;

*People v. Gerold,* 265 id. 448.) It is in the discretion of the court to admit such statements or schedules or figures or the results of the examination of numerous documents or account books to be introduced in evidence, such statements, schedules or results to be verified by the testimony of the witness by whom they were prepared, allowing the adverse party an opportunity to examine them before they are admitted in evidence and to examine the witness from the original books, where such books are accessible. (*People v. Sawhill,* 299 Ill. 393.) While the results of the examination of voluminous documents, writings, records and books may be proved by expert accountants or other competent person who has made the examination, the documents, records or books upon which the examination is based must be of such a character as to be themselves admissible in evidence. The oral evidence is admissible because the voluminous character of the instruments of evidence precludes their examination in court, and the testimony to results reached by their examination is merely a statement of what those instruments show. It was therefore necessary that the books and papers which the expert accountants examined should themselves have been competent evidence. In order to render an account book admissible in evidence it is essential that proof as satisfactory as the transactions are under the circumstances reasonably susceptible of, shall be given that the entries made are correctly recorded. (*People v. Small,* 319 Ill. 437; *Chisholm v. Beaman Machine Co.,* 160 id. 101; *House v. Beak,* 141 id. 290.) Where the testimony of a witness who made the entries is not available it is competent to establish the authenticity of the book by other evidence. The only evidence produced of the authenticity of the books which the accountants examined is the testimony of the cashier of the LeRoy Bank. He did not become cashier until three months after the making of the

contract and the transfer of the assets to that bank. He did not make all the entries in the books. He did not testify, and could not testify, to the correctness of all those entries. Entries were made by the assistant cashier and other persons whose names were mentioned in the cashier's testimony, but they were not called to show that the entries were correctly made, and there was no testimony that they were not available. Exhibit A-20, which was used in reaching the results arrived at by the accountants, was in large part not a book of original entry, but was, so far as more than half of the period which it purported to cover was concerned, copied from other books to whose authenticity and correctness no one testified. For these reasons the books were not admitted in evidence. The conclusions of the accountants, however, based on these books, which were not so verified as to make them competent evidence, were received and were made the basis of the judgment which was rendered. The court instructed the jury, in determining the amount the plaintiff was entitled to recover, to consider its entire claim to be $79,825.70, which Geiger testified was the corrected amount of the deficit due from the defendants on April 26, 1927. Since the books were not shown to be competent evidence the statement of the conclusions reached by a consideration of them was not competent evidence and should not have been admitted.'' On the last trial of the case all the entries made in the books of account, records and other documents admitted in evidence were verified by those who made them and they were admitted in evidence and the testimony of the expert accountants was based upon such verified accounts and the error in the admission of the testimony of the expert accountants on the first trial was thereby obviated on the last trial. The evidence on this appeal, except as to the verification of the books of account and other records, is substantially identically the same as that

introduced on the first trial, but it is again urged on this appeal that the appellants were damaged because appellee did not use its best efforts to collect some of the assets and again three transactions are presented as examples, to wit: the Bailey account, the Crosson account and the Phillips account. The questions involving these accounts were passed upon by this court on the former appeal and by the Supreme Court and are also *res adjudicata.*

In writing up the judgment in this case the clerk omitted therefrom A. J. Keenan, one of the defendants and who had been defaulted. This clerical error was afterwards properly corrected as shown by the additional transcript of the record filed herein.

At the close of all the evidence the court gave a written instruction to the jury directing them to find a verdict for the plaintiff in the sum of $70,836.14. The court did not require the jury to write out a formal verdict but entered the verdict on his docket and it is claimed this was error. This assignment of error cannot be sustained for two reasons. No such question was raised or presented in the trial court and cannot be raised in this court for the first time. Appellants filed written points in support of their motion for a new trial and repeatedly recognized that a verdict was in fact rendered. Among the points so filed were the following in substance: The court improperly fixed an incorrect sum to be returned in said verdict; the verdict is contrary to the law and the evidence in the case; the verdict is contrary to the manifest weight of the evidence; the verdict is inconsistent with the bill of particulars. The second reason is that under such circumstances it is not required that the jury sign a formal written verdict. In the case of *Evaniski v. Mt. Olive & Staunton Coal Co.,* 223 Ill. App. 33, it was held: "Plaintiff could not be permitted to contradict the record which shows that the jury returned

a verdict of not guilty by the affidavits of some of the jurors. When the court directs the jury as to the verdict to be returned, it is not necessary that a verdict be actually written out and signed by the jury and returned into court." In an analogous case, *Kinser v. Calumet Fire Clay Co.*, 165 Ill. 505, the court said: "The contention that it was error to refuse to allow the jury to be polled after it had obeyed that instruction is, in our opinion, wholly without merit. The peremptory instruction to find for the plaintiff was, in effect, taking the case from the jury. When the court directs a verdict an issue of law is raised upon the whole case, and there is no fact for the jury to find. To poll a jury upon the rendering of such a verdict would be an idle ceremony, resulting in no possible benefit to any one."

Another error assigned is that the amount found to be due by the court was erroneous but it is not suggested by counsel for appellants, aside from their contention that no interest should have been allowed, as to what the proper amount should have been. Upon the former appeal, where the evidence in regard to the accounting between the parties to the contract was substantially the same we gave the question of accounting between the parties to the contract a very careful consideration, reviewed the same to the best of our ability and concluded that the evidence fully sustained the amount of damages fixed by the jury in that case which was larger than the amount which the court on the last trial directed the jury to find. While it is true that the court in arriving at the amount due took as a basis the audit made by the expert accountants, yet he did not adopt the same but considered the whole evidence and allowed credits to the amount of $2,220.75 to be deducted therefrom. Whether the allowance of these credits was correct is a question not before us for determination. The

record in this case consists of over 4,350 pages contained in six large volumes, and embraces all the transactions in the process of liquidation over a period of three years and our conclusion is from the evidence that the court allowed appellants all the credits that they were entitled to under the law.

. It is assigned as error that the court allowed interest on the balance found due from the date of the institution of the suit to the day of the verdict. It is claimed by counsel for appellants that no interest should have been allowed for the reason that paragraph 2, Cahill's St. ch. 74, in relation to the allowance of interest has no application to this contract. This statute is as follows: "Creditors shall be allowed to receive at the rate of five per centum per annum for all moneys after they become due, on any bond, bill, promissory note or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance." It is contended that interest on appellee's claim is not governed by that provision of the above section which allows interest money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance because the account was never liquidated. An account may be liquidated although the amount may be undetermined. At the end of the three-year period provided by the contract of guaranty the amount could not be accurately ascertained. It is also contended that under the doctrine of *ejusdem generis* a contract of guaranty cannot be considered under the designation of "or other instrument in writing." This construction sought to be placed upon the statute in our opinion is entirely too narrow and not in accordance with the construction that has been placed upon those words by the Supreme Court. In *Smith v. Gray,* 316 Ill. 488, the suit was upon a contract for remodeling

a house, and the defendant claimed damages caused by reason of delay in the performance of the contract. In *Heissler v. Stose*, 131 Ill. 393, the suit was to recover rent under a written lease, the amount of rental to be fixed by referees in case the parties failed to agree. In each of these cases the amount due under the contract was not fixed but was undetermined and the court held that the contract in question was embraced in the words, "other instruments in writing." The court did not err in allowing interest on the principal amount.

Appellee has filed a cross error to the effect that the court erred in its calculation of the interest. It is claimed that after the suit was commenced and between February 10, 1927, and March 3, 1930, assets of J. Keenan's Bank were collected to the amount of $19,226.42 and that the court in fixing the principal debt first deducted this amount from the amount due at the time of the institution of the suit, while the correct way of ascertaining the interest under such circumstances would be to take the principal sum due January 26, 1927, and as these different items were received by appellee, to first apply them upon the interest due at the time each was received respectively and any balance thereon remaining after the application on the interest, be deducted from the principal debt. Without passing upon the merits of this contention, it is sufficient to say that while an enumeration of these subsequently collected assets are set out in the brief of appellee, no references are made to the abstract where any of them can be found and this court cannot under the rules be required to examine 4,000 pages of record in order to ascertain the correctness of this contention. The cross error of appellee is overruled.

In our judgment there is no reversible error in the record. The judgment of the circuit court is affirmed.

*Affirmed.*