338

Standard Oil Company of Indiana, Appellee, v. Daniel
Burkhartsmeier Cooperage Company, Appellant.

Gen. No. 44,235.

✦ See Callaghan's Illinois Digest, same topic and section number.

Opinion filed February 16, 1948. Released for publication March 2, 1948.

. CAMPBELL, CLITHERO & FISCHER, of Chicago, for appellant.

ERWIN W. ROEMER, JAMES A. VELDE and STARK RITCHIE, all of Chicago, for appellee; GARDNER, CARTON & DOUGLAS, of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment for $28,500 entered against it in plaintiff's action for alleged breach of a written warranty in the sale of a reconditioned steel barrel.

Plaintiff, a dealer in petroleum products, sold and delivered barrels for the storage of its products. Defendant's business included the cleaning and reconditioning of used steel barrels or drums and selling them at wholesale. On October 28, 1938, plaintiff, confirming a telephone order of the previous day, sent defendant a written order on its printed form for 1,200 fifty-five gallon 18-gauge reconditioned steel barrels "To be thoroughly cleaned and painted. These barrels are to be entirely satisfactory in every respect or they will be returned for full credit at no expense to us. For resale." In conformity with this order defendant delivered 100 barrels to plaintiff's Courtland street yard. Ten days later plaintiff sold and delivered a barrel, claimed by it to have been received from defendant, to a customer for the storage of fuel oil. Plaintiff's driver placed the barrel in the basement and returned to the truck for a wrench. In his absence Lawrence

Veneigh, the 12-year-old son of the customer, lighted a match near the barrel, causing an explosion and severe injury to himself. When claims were made against plaintiff it tendered the defense to defendant and informed defendant that it would demand indemnification for any loss and expense incurred or to be incurred because of the injuries to the boy. Defendant refused to accept the tender. In 1939, the father of the boy, as next friend and on his own behalf, brought suit to recover damages sustained, charging plaintiff and defendant here with negligence in selling the barrel containing explosive substances, etc., and further charging plaintiff with breach of an express and implied warranty that the barrel would be safe and adequate for the storage of fuel oil and had been properly cleaned.

Further proceedings in that suit were as follows:— The answer of plaintiff here denied the charges of negligence and breach of warranty and alleged that the barrel delivered by it had been received from defendant. Defendant here denied the charge of negligence and asserted that all barrels delivered by it to plaintiff had been thoroughly cleaned and that none contained explosive substances. The jury was instructed at the request of plaintiff here that if it believed the barrel in question was purchased by plaintiff from defendant, a reputable company; that the barrel was sold and received as being clean; that plaintiff here in the exercise of ordinary care could not know what the barrel had previously contained and that nothing was put into the barrel after it was received by plaintiff here but the barrel was delivered to plaintiff's customer in the same condition as when received from defendant, then the jury should find the plaintiff here not guilty. The jury was instructed at the request of defendant here that before it could find the issues against defendant it must find that the barrel in question was sold and delivered by defendant to plaintiff

herein and that Veneigh's injury and damages were the natural and probable consequence of the negligence of defendant. By their general verdicts the jury found defendant not guilty and the plaintiff guilty. After remittitur judgments were entered against plaintiff herein for $22,500. These judgments were paid December 26, 1941. In 1942, plaintiff brought this action to recover from defendant the amount paid on the judgments and the money necessarily expended in defense of the Veneigh suit. No question is raised as to the sufficiency of the complaint.

Plaintiff's claim is based on an alleged breach of an express warranty in the contract of sale that the barrels were to be thoroughly cleaned. Defendant moved to dismiss the complaint under section 48 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 172; Jones Ill. Stats. Ann. 104.048] "on the ground of estoppel by verdict, because the controlling question, i. e., whether or not defendant delivered to plaintiff the barrel involved in the accident had been decided adversely to plaintiff" in the Veneigh suit. In support of the motion defendant filed the affidavit of John F. Arnold, one of its attorneys in the trial of the Veneigh suit, stating in substance the pleadings, instructions, verdicts and judgments in that suit as heretofore outlined. Attached to the affidavit were the pleadings and affidavits of eight of the jurors. These affidavits are identical in form, each stating that one of the questions presented to the jury was whether the barrel involved in the accident was sold and delivered to plaintiff by defendant, and that in deciding the question it was affiant's opinion, and, he believed, the opinion of all the jurors trying the case, that the barrel was not sold and delivered to plaintiff by defendant, and that because of that opinion he, and in his opinion the other jurors, found the defendant not guilty. By order of court restoring lost files there is now in the record the affidavit of one of the jurors in

the Veneigh case which counsel for plaintiff say was presented to the trial court with a memorandum of points in opposition to defendant's motion to dismiss. In this affidavit the affiant states that from the evidence she was convinced that the barrel involved in the accident had been sold and delivered to plaintiff by the defendant and that she found the plaintiff herein guilty because it had sold the barrel to Veneigh, and she believed at the time that it had a good claim against the defendant here. Defendant insists that the court erred in restoring this affidavit to the files. For reasons hereafter appearing we do not consider it necessary to decide that question. As said in *People v. Wyanet Elec. Light Co.*, 306 Ill. 377, 383, "It is absolutely necessary in order that a former judgment should operate as an estoppel by verdict that there shall have been a finding of a specific fact in such former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on this point by reason of the fact that more than one distinct issue of fact is presented to the court the estoppel will not be applied, and for the reason that the court may have decided it upon one of the other issues of fact. *Chicago Theological Seminary v. People*, 189 Ill. 439; *Kitson v. Farwell*, 132 id. 327; *Sawyer v. Nelson*, 160 id. 629." See also *Haack v. Lindsay Light & Chemical Co.*, 393 Ill. 367. In the *Veneigh* case there was no specific finding of fact as to the origin of the barrel. Although warned that plaintiff herein would look to it for indemnification in the event of an adverse result in that suit, defendant did not request that a special interrogatory determining the origin of the barrel be submitted to the jury. Neither of the instructions, stated in sub-

stance in Arnold's affidavit, necessarily required a determination of the origin of the barrel. Under the instruction given at the request of plaintiff here the jury could have found that plaintiff received the barrel from the defendant, but that in the exercise of ordinary care plaintiff could have known what the barrel had previously contained. Under the instruction requested by defendant the jury could have determined that defendant delivered the barrel to plaintiff but that Veneigh's injury and damages were not the natural and probable consequence of negligence of the defendant. It therefore does not appear from the record that the question of the origin of the barrel was determined by a finding of the specific fact, or necessarily determined by the jury in arriving at their verdicts upon the issues presented and under the instructions of the court. Defendant, however, contends that the affidavits of the eight jurors show that this question was in fact determined by the jury. Plaintiff contends that the affidavits of the jurors are not competent to show the basis of the jury's verdict and that, if competent, they do not prove the fact by the clear, certain and convincing evidence required of a party asserting an estoppel by verdict. *Chicago Theological Seminary v. People ex rel. Raymond,* 189 Ill. 439, 444. Plaintiff's contentions must be sustained. In *People ex rel. Bear v. Burt,* 267 Ill. 640, cited by defendant, the court said: "Where.a former recovery is relied on as a bar, parol evidence not contradictory of the record may be introduced to show what was included within and investigated on the trial of the issue. If the record does not show the full and true state of the controversy and matters investigated, parol evidence is admissible to supply what is not shown." It must be noted that the language quoted limits the parol evidence to that necessary to show "what was included within and investigated on the trial of the issue," and the "true state of the controversy and

matters investigated." In *Little v. Blue Goose Motor Coach Co.,* 346 Ill. 266, also cited by defendant, where the judgment of a justice of the peace was interposed in bar of a subsequent action, the justice was permitted to testify to the facts showing the issue before him and that witnesses testified in the case. The judgment rendered was shown by the docket of the justice. There was no testimony or offer of testimony of the finding of the justice as to any fact material to the issue before him. In *Rubel v. Title Guarantee & Trust Co.,* 101 Ill. App. 439, the defendant sought to interpose as a bar to an action for rent a prior judgment fixing the value of the leasehold in a condemnation proceeding before the court without a jury. The Appellate Court, after stating that "parol evidence is admissible to show what points were in controversy in the former trial, what testimony was given and what questions submitted, but not to the extent of contradicting the record," said: "The secret deliberations of the jury or grounds of their proceedings in arriving at a verdict are not admissible," and cited *Packet Co. v. Sickles,* 5 Wall. (U. S.) 580, and *Tutt v. Price,* 7 Mo. App. 194. In *Packet Co. v. Sickles,* where an alleged estoppel by verdict was involved, the court said: "Some of the jurors in the former trial were permitted to testify as to the particular ground upon which they found the verdict. This testimony was not objected to, and therefore is not available as error here. But it is proper to say, that the secret deliberations of the jury, or grounds of their proceedings while engaged in making up their verdict, are not competent or admissible evidence of the issues or finding. The jurors oftentimes, though they may concur in the result, differ as to the grounds or reasons upon which they arrive at it." This *dictum* is in harmony with the better reasoned cases, among which is *Hearn v. Boston & M. R. Co.,* 67 N. H. 320, where the question is discussed at length. Other cases to the same effect

are *Ajax Rubber Co. v. Gam,* 130 Atl. (Del.) 395; *Agan v. Hey,* 30 Hun 591; and *Brinkerhoff v. Home Trust & Savings Bank,* 109 Kan. 700. If the affidavits were held to be competent evidence, they fail to sustain defendant's claim. Eight jurors stated that in their deliberations they were of the opinion that the barrel was not delivered to plaintiff by defendant and because of that opinion they found the defendant not guilty. Each juror also states that he believes the remaining jurors, including four jurors not making affidavits for defendant, had the same opinion and because of that opinion found defendant not guilty. No facts are stated upon which these jurors formed their conclusions as to the opinions of the remaining jurors. From the language of the affidavits, prepared by defendant's counsel, we must assume that no vote to determine the question was taken by the jurors or other means adopted to ascertain positively and directly the judgment of the jury on the question as would be done if the jury were answering a special interrogatory. The affidavits merely state a belief of the affiants as to the mental attitude of their fellow jurors. These conclusions are not admitted by the failure to file counter affidavits and are not evidence of the things believed. Hence there is no evidence that the jury ever determined the question of the origin of the barrel. The court properly denied defendant's motion.

After denial of its motion defendant answered, putting in issue, with other matters, the origin of the barrel. There is no substantial conflict in the evidence, which clearly shows: Defendant bought many barrels for reconditioning from the American Can Company, which wrote defendant December 14, 1937 that "Many of the empty barrels which we sell to you have been used in shipping highly inflammable coating materials, solvents, compounds, etc., with the result that the fumes remain in the drums after they have been emptied." Defendant replied, ". . . we take these

drums with full knowledge of any inflammable or explosive material therein." The barrel in question was originally filled with lacquer, which is inflammable and explosive when ignited with an open flame. It was shipped from Pittsburgh, Pa., to the American Can Company in Chicago. To comply with the law the ends of the barrel were painted red and a red label warned "Keep AWAY from FIRE, Heat and Open-flame Lights—CAUTION—Leaking Packages Must be Removed to a Safe Place." In draining there is a residue of one-half to a pint of lacquer, which can be detected by its odor by anyone close enough to screw up the bung. Defendant got the barrel from the American Can Company, painted it black but did not clean it before delivering it to plaintiff, who accepted it without inspection. The cleaning process used by defendant would have removed the residue in the barrel. The black paint concealed and covered the red paint and red "CAUTION" label so that when delivered to plaintiff there was nothing on the barrel to indicate its former contents or danger of an explosion. The lighted match held by the boy caused the explosion.

Delivery of barrels under plaintiff's telephone order, confirmed by its written order, constituted an acceptance of the latter order with all its terms and conditions. Defendant thereby promised and represented to plaintiff that all barrels would be thoroughly cleaned and painted before delivery. This promise and representation was an inducement to plaintiff without which it would not have entered into the contract. That it relied upon the promise and representation is shown by the testimony of the man who gave the order and by the fact that the shipment to the Cortland street yard was accepted without inspection. There is, therefore, an express warranty that the barrels tendered under the contract would be thoroughly cleaned and painted. Uniform Sales Act, secs. 11 and 12, Ill. Rev. Stat. 1947, ch. 121½

[Jones Ill. Stats. Ann. 121.15, 121.16]. There being an express warranty, plaintiff was not required to inspect the barrels. *Underwood v. Wolf,* 131 Ill. 425, 435; *Cook v. Perfection Piano Bench Mfg. Co.,* 236 Ill. App. 472, 476, citing Williston on Sales (2d ed.), sec. 208. The remedies of the buyer on breach of warranty, in the absence of a special agreement of the parties, so far as applicable to the facts before us, are stated in section 69 of the Uniform Sales Act [Ill. Rev. Stat. 1947, ch. 121½, par. 69; Jones Ill. Stats. Ann. 121.73] as follows: "(1) Where there is a breach of warranty by the seller, the buyer may, at his election—(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty. (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid." Defendant contends that because of the provisions in plaintiff's order that "these barrels are to be entirely satisfactory in every respect or they will be returned for full credit at no expense to us," plaintiff waived its right to damages and is confined to an action for the price of the barrel on its return or offer to return it. The right of the parties to contract as to the remedy for breach of their agreement is recognized at common law and under sections 49 and 71 of the Uniform Sales Act [Ill. Rev. Stat. 1947, ch. 121½, pars. 49, 70; Jones Ill. Stats. Ann. 121.53, 121.74]. As said in Williston on Sales (2d ed.), vol. 2, sec. 611a, p. 1533: "It is not uncommon for warranties to state the remedy, or remedies, to which a buyer shall be entitled on breach of the warranty. It is often not clearly stated whether a remedy thus indicated in the contract between the parties is stated as the exclusive redress, or is merely permissive. Thus it is not uncommon for warranties expressly to state that the buyer shall have the right to rescind the transaction for

breach of warranty, and that on the returning of the goods in such event the buyer shall either be entitled to have his money back or to have other goods instead of those first taken. A slight difference in wording in such a contract may justify the interpretation that this is the buyer's exclusive remedy, or that it is a privilege granted to him in addition to any that he might otherwise have. . . . In each case the contract must be interpreted, for unquestionably a contract may provide for rescission as a sole remedy. On the other hand mere permission given in a contract to the buyer to rescind the sale and return the goods should not without more exclude the buyer from pursuing other remedies allowed by the law for breach of warranty, though it may be held in some states to have this effect. A right given the buyer by law should not be regarded as bargained away unless the contract clearly so states, especially if the contract was drawn by the seller.'' In the statement of facts in defendant's brief it says that its answer averred ''that said barrels were sold subject to inspection by plaintiff, with the privilege on the part of plaintiff to return for credit all barrels which were not satisfactory in every respect.'' An examination of the cases shows as stated by Williston, that where the return of the thing sold is permissive and not mandatory, the right to return is held to be a cumulative remedy which the buyer may exercise at his election, or pursue his remedy for breach of warranty. Illinois cases to that effect are *Kemp v. Freeman,* 42 Ill. App. 500, 501; *Cook v. Lantz,* 116 Ill. App. 472, 474, 475; *Woodford Distilling Co. v. Remington Typewriter Co.,* 174 Ill. App. 244, 249, 250; *Burke v. Instant Heat Co. of America, Inc.,* 236 Ill. App. 275, 279.

Defendant further contends: ''If it be assumed that the barrel in controversy was one of the barrels delivered to plaintiff by defendant and that the language of the order created a warranty, never-

theless the injury to the Veneigh boy was not the proximate result of the failure to clean the barrel but was brought about by an independent, intervening cause over which defendant had no control whatever; that is, the Veneigh boy lighting a match and applying it to the bunghole of the barrel." In support of this contention defendant cites *Sycamore Preserve Works v. Chicago & N. W. Ry. Co.*, 366 Ill. 11, an action to recover for loss of buildings by fire originating on defendant's right-of-way, based upon defendant's violation of a statute requiring railroads "to keep their right-of-way clear from all dead grass, dry weeds or other dangerous combustible material." In discussing proximate cause the court said (16, 17): "It is a rule, long established and often announced, that liability for negligence must be based upon such relationship between the act and the injury that the act may be said to be the proximate cause of the injury. It is also the rule that the intervention of independent concurring or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. . . . It is not sufficient that appellee be able to foresee that if a fire were started by someone else danger would result because of the condition of the right-of-way but the thing foreseeable or probable, which the rule of proximate cause contemplates, is that such independent forces will probably, or are likely to, concur or intervene." The jury was instructed substantially to this effect. On behalf of plaintiff it was told that as a prerequisite to recovery of the amount paid by plaintiff in satisfaction of the judgment in the *Veneigh* case it should find "that the defendant knew or had good reason to know at the time it entered into the contract in question that a breach of its terms to thoroughly clean said barrels might result in an explosion and cause personal injuries to plaintiff's customers and unusual damage to the plaintiff herein." On behalf of defendant it was

instructed that "defendant would only be liable for the direct damages occurring out of the breach which were reasonably within the contemplation of the parties at the time the contract was made," and that "plaintiff would only be entitled to recover damages which were the natural and reasonable result of defendant's acts; that is, the consequences of the breach of the contract (if there was a breach) must be such as in the ordinary course of things could reasonably be anticipated by defendant to follow from the act as a natural result thereof; but the defendant would not be liable for damages occasioned by some unusual and unexpected result not reasonably to be anticipated from an accidental or unusual combination of circumstances which could not reasonably have been anticipated or have been within the contemplation of the parties to the contract at the time it was made." The jury found adversely to defendant on evidence which supported the verdict. Before contracting with plaintiff defendant had been warned that it was purchasing many barrels which had been used in shipping inflammable material, with the result that the fumes remained in the drums after they had been emptied. The red ends and the red "CAUTION" label gave defendant notice that the barrel in question had been so used. Likelihood of an explosion from contact with an open flame, causing injury to persons or property, was reasonably probable and foreseeable as a direct result of the delivery of the barrel to persons ignorant of its dangerous contents. It is not necessary that the precise manner of the explosion should have been foreseen. *Neering v. Illinois Cent. R. Co.*, 383 Ill. 366, 380. Damages for breach of warranty, as stated in the Uniform Sales Act, are: "Section 69 (6): The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from a breach of warranty." "Section 69 (7): In the case of breach of warranty of qual-

ity, such loss, *in the absence of special circumstances showing proximate damage of a greater amount,* is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." (Italics ours.) "Section 70: Nothing in this act shall affect the right of the buyer or the seller to recover interest or special damages where by law interest or special damages may be recoverable. . . ." Williston on Sales (2d ed.), vol. 2, sec. 599a, says: "As damages for the proximate and natural consequences of a breach are recoverable, it becomes necessary to inquire when consequential damages fall within this category, when no notice has been given of special circumstances. . . . Under this principle where goods are sold with a warranty to a dealer, it must be assumed that the dealer may resell them with a similar warranty to a sub-purchaser. Accordingly if this is done and the sub-purchaser recovers damages from the original buyer, the latter has a *prima facie* right to recover these damages against the seller who originally sold them to him." And further, in section 614a the author says: "The general principle allowing consequential damages naturally resulting from a breach of warranty is not much disputed, but the question of what consequential damages are too remote is not always decided in the same way. Especially where personal injury is caused by the defect in the warranted article to a third person, and the buyer is compelled to pay damages to the person injured, it is disputed whether the buyer can recover these damages from the seller. By the weight of authority he is allowed to do so, and this result seems correct, at least if the defect in the thing sold was of a sort likely to cause the injury which in fact took place." In *Boston Woven Hose & Rubber Co. v. Kendall,* 178 Mass. 232, a boiler was sold with a warranty that it would stand a pressure of 100 lbs., and the seller knew the boiler was to be used

to contain naphtha vapor; the boiler exploded at a pressure of less than 100 lbs., the naphtha vapor escaped into the air and ignited, resulting in injuries to the buyer's employees for which the buyer was compelled to pay damages. In sustaining a judgment allowing these damages, MR. CHIEF JUSTICE HOLMES, after commenting on the buyer's failure to inspect, said (237): "Such a failure might make the plaintiff answerable to its men, but even if its conduct be called want of ordinary care, it was induced, as we must assume after the verdict, by the warranty or representations of the defendants. The very purpose of the warranty was that the boiler should be used in the plaintiff's works with reliance upon the defendants' judgment in a matter as to which the defendants were experts and the plaintiff presumably was not. Whether the false warranty be called a tort or a breach of contract the consequences which ensued must be taken to have been contemplated and was not too remote. The fact that the reliance was not justified as toward the men does not do away with the fact that the defendants invited it with notice of what might be the consequences if it should be misplaced, and there is no policy of the law opposed to their being held to make their representations good." In *Dushane v. Benedict*, 120 U. S. 630, a rag dealer sold rags, warranted clean, to a paper maker; the rags were in fact infected with the smallpox so that the buyer's employees were stricken with the disease; some died and others were prevented from working, resulting in interruption of the buyer's business and in money payments by him for the support of persons disabled. The money so paid was held to be a proper element of damage. In *Aldridge Motors, Inc. v. Alexander*, 217 N. C. 750, the buyer and seller were both automobile dealers; the buyer purchased an automobile, which he sold to his customer; because of defective wiring the automobile caught fire and burned. The original seller was held

liable to the buyer for the damages which the buyer was compelled to pay to his customer for the destruction of his automobile and garage. Other cases to like effect, are *Dayton Power & Light Co. v. Westinghouse Electric & Mfg. Co.*, 287 Fed. 439; *Manning Mfg. Co. v. Hartol Products Corp.*, 99 F. 2d 813; and *Wolstenholme, Inc. v. Jos. Randall & Bro.*, 295 Pa. 131.

■ Defendant contests the allowance of interest, amounting to $6,000. Interest is recoverable only if the damages are liquidated or ascertainable by a simple computation or by reference to generally recognized standards such as market prices. *Duncan Lumber Co. v. Leonard Lumber Co.*, 332 Ill. 104, 108; *Smith v. Gray*, 316 Ill. 488, 499; *Brownell Improvement Co. v. Critchfield*, 197 Ill. 61, 71; *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.*, 266 Ill. App. 46, 59. From its demand for indemnification to the end of the trial, when by instructions given on its behalf it narrowed its claim to money paid in satsfaction of the judgment and interest, plaintiff was also claiming as damages the amount expended in the defense of the Veneigh action. Although consisting of two items, the damages accruing from defendant's breach of warranty was a single demand incapable of division. *Rosenmueller v. Lampe*, 89 Ill. 212, 215; *Dulaney v. Payne*, 101 Ill. 325, 329. The only expenditures in defense of the Veneigh action recoverable as damages were those reasonably necessary and reasonable in amount. Plaintiff's claim was an unliquidated demand on which interest cannot be allowed. (*Trego v. Rubovits*, 178 Ill. App. 127.) It did not become a liquidated demand until plaintiff by its instructions surrendered or waived its rights to its reasonable expenditures in the Veneigh action. Interest was allowable only from the date of liquidation, which was the day of the verdict.

■ Defendant's objections to evidence received cannot be sustained. The correspondence be-

tween the American Can Company and the defendant was competent and material on the question of notice to defendant that some of the barrels it was reconditioning had contained inflammable material the fumes of which remained in the barrel. The testimony of plaintiff's agent that he relied on defendant's undertaking that the barrels would be thoroughly cleaned was competent to prove an essential element of a warranty. Defendant's objection to instruction 14 given on behalf of plaintiff and telling the jury it should find for plaintiff if plaintiff had proved its case as alleged in its complaint, is answered by *Lerette v. Director General of Railroads,* 306 Ill. 348, at page 355, a case cited by defendant. The action of the court in giving and refusing other instructions complained of, except instruction 24, was in conformity with the views hereinbefore expressed by us. Instruction 24 given on behalf of plaintiff directed a verdict. Defendant contends that the instruction is erroneous in omitting, among other things not necessary to state, "all reference to the independent intervening cause over which defendant had no control, i. e., the applying of the match to the bunghole by the small boy to satisfy his curiosity." If there had been a conflict in the evidence this objection might require further consideration. In this case no other verdict could have been rendered consistent with the evidence and the law of the case. As said in *Farmer v. Davis,* 289 Ill. 392, 399: "One or two of the five instructions complained of may be subject to criticism, but where the evidence warrants the verdict a decree will not be reversed for inaccuracies in instructions. There is no reason to believe a different verdict and decree might have resulted if none of the instructions complained of had been given. Courts of review reverse for only such errors as may have been prejudicial to the party complaining. *Heckle v. Grewe,* 125 Ill. 58; *Pahlman v. King,* 49 id. 266; *Watson v. Woolverton,* 41 id. 241; *Curtis v. Sage,* 35 id.

22.'' In *Fuzessery v. American Benefit Casualty Ins. Co.*, 256 Ill. App. 476, 480, the court said: ''It is next contended that the court erred in refusing to give the instructions offered by the appellant. Our courts have repeatedly held that the Appellate Courts will not reverse a judgment for errors in the instructions to the jury or admission of evidence where, under the evidence, the jury could have rendered no other verdict consistent with the evidence in the case. (*White v. Holden*, 206 Ill. App. 567; *Vinson v. Scott*, 198 Ill. 542; *Jackson v. People*, 126 Ill. 139; *Ryan v. Donnelly*, 71 Ill. 100.)'' See also *Pridmore v. Chicago, R. I. & P. Ry. Co.*, 275 Ill. 386, 396.

Because of the error in awarding interest to plaintiff the judgment is reversed and the cause remanded for a new trial, unless plaintiff shall within 20 days remit in this court the sum of $6,000. If such remittitur is entered the judgment will be affirmed for $22,500.

*Judgment reversed and cause remanded for new trial unless plaintiff shall within 20 days remit in this court $6,000, in which event judgment will be affirmed for $22,500.*

FEINBERG and O'CONNOR, JJ., concur.