**Arsen Bugdoian, Appellant, v. Union Trust Company of East St. Louis, Appellee.**

**Term No. 49F1.**

Opinion filed May 2, 1949. Released for publication June 9, 1949.

Jos. B. McGlynn, of East St. Louis, for appellant; Wayne P. Williams, of East St. Louis, of counsel.

Kramer, Campbell, Costello & Wiechert and Norman J. Gundlach, all of East St. Louis, for appellee.

Mr. Presiding Justice Culbertson delivered the opinion of the court.

This is an appeal by appellant, Arsen Bugdoian (hereinafter called plaintiff), from the allowance by the court of a motion filed by appellee, Union Trust Company of East St. Louis (hereinafter called defendant) for a judgment *non obstante veredicto,* and in the alternative, granting defendant's motion for a new trial.

Plaintiff had filed his complaint on February 15, 1946, wherein he alleged that defendant was a corporation at all times mentioned in said complaint, engaged in the banking business in the City of East St. Louis, Illinois, and was so engaged on August 23, 1944; that on said date plaintiff was a depositor in said bank and

the relationship of debtor and creditor existed between plaintiff and defendant by reason of certain deposits made by the plaintiff in defendant's bank; that on August 23, 1944, plaintiff deposited in his bank account in defendant's bank the sum of $1,430.76, and defendant is indebted to plaintiff for said sum and demand was made upon defendant for said sum but that defendant has refused to pay same, wherefore plaintiff demands judgment against defendant for said sum. The answer filed by defendant admits it is a corporation engaged in the banking business in the City of East St. Louis, and admits that plaintiff was a depositor in said bank on August 23, 1944, but denies that plaintiff ever deposited the sum of $1,430.76 and denies that any relationship of debtor and creditor existed as to said deposit, and says that no such deposit was ever made by the plaintiff or received by the defendant. It denies that plaintiff made said deposit and denies that plaintiff made demand upon defendant for said sum, and denies that it refused to pay the same to plaintiff, and for further answer defendant alleged that it was ready, able and willing to pay at any time upon proper legal demand, any moneys held by it and belonging to the plaintiff which he is entitled to receive, and expressly denies that the alleged deposit mentioned was ever made by plaintiff or received by defendant, and it denies that it owes plaintiff anything whatsoever on account of the deposit. The issues having been made up by the pleadings, this cause came on before the court and a jury for trial, and the jury found the issues in favor of the plaintiff and against defendant, and assessed plaintiff's damages in the sum of $1,430.76. The court having allowed the motion for a judgment *non obstante veredicto,* and also, in the alternative, for a new trial, this appeal follows.

We have examined with great care the evidence produced to determine the propriety of the action of the court in allowing the motions. There was a sharp

conflict between the evidence of the plaintiff and defendant on the question of the making of the deposit which was the basis for this suit. It appears from the evidence that the plaintiff, who was his only witness, had operated a tavern in East St. Louis, Illinois for a number of years, and it had been his custom to cash payroll checks for the employees of at least six industries in the vicinity of his tavern. He cashed from 85 to 166 checks a week, and most of them were checks of the Certain-teed Products Company. It appears that plaintiff had done banking business with the defendant for several years prior to 1944, and maintained a savings and a checking account at said bank. It was plaintiff's custom to deposit the payroll checks in his checking account at least once a week, although he had no fixed day of the week to go to the bank for that purpose. At the time of the deposit in question, on August 23, 1944, and prior thereto, plaintiff kept no record of his business, showing the name of any person whose payroll check was cashed, nor the amount of any of said checks. Neither did the plaintiff keep duplicate deposit slips for his deposits. The only record that plaintiff had was the original deposit slip, which of course, was turned in to the bank, when such checks were deposited. The original deposit slip listed the amount of each check, included in such deposit, but the name of the payee of such check was not listed in any manner.

On August 23, 1944, plaintiff testified he went to defendant bank with his bankbook and with two separate deposit slips. With each deposit slip, attached thereto by a rubber band, was a group of checks, the amounts of which had been listed on the deposit slips. Plaintiff testified he had two deposit slips instead of one for the reason that several days earlier he had made up a deposit slip, preparatory to going to the bank, but because of illness of his wife he was unable to make the trip and thereafter, having cashed another

series of checks, he made up a second deposit slip before going to the bank on August 23. Plaintiff contends upon reaching the bank he took his deposit to the window of Charles Waldo, one of the tellers; that he passed his bankbook and one of the deposit slips with checks through the window and that these checks were totaled by Waldo on the adding machine and the amount of $1,430.76 then entered in plaintiff's bankbook. Plaintiff contends he then handed Waldo the second deposit slip with checks attached and after some conversation as to the reason for not handing both deposits in at the same time, the second group of checks was totaled on the adding machine and the second deposit entered in the bankbook in the amount of $1,427.72. Plaintiff testified the bankbook was then returned to him and he departed. Plaintiff's exhibit number 2, received in evidence, shows these entries among others in plaintiff's bankbook.

Plaintiff's account was balanced monthly by the defendant bank and about the 15th of September 1944, plaintiff obtained from the bank his cancelled checks and ledger sheet covering the period from August 11, 1944 to September 11, 1944. Plaintiff testified in checking the ledger sheet with his bankbook he discovered the ledger sheet omitted to give him credit for the deposit of $1,430.76 on August 23, which deposit was shown upon his bankbook. Plaintiff testified he went to the defendant bank and talked to Mr. Waldo and exhibited to him his bankbook and ledger sheet and informed Mr. Waldo that a mistake had been made because the ledger sheet (exhibit 3) showed only one deposit on August 23. Plaintiff testified that Mr. Waldo looked at the bankbook and ledger sheet and replied that he believed that there was only one deposit and that Mr. Waldo then went somewhere in the back part of the bank and upon returning told plaintiff that only one deposit showed up. Plaintiff contends that he then called Mr. Waldo's attention to the conversa-

tion had at the time the deposits were made and that Mr. Waldo repeated there was only one deposit and that there was nothing he could do. Plaintiff then talked to Mr. Shay, vice-president of the bank, and Mr. Shay in turn went back into the bank and returned later and told plaintiff he did not have two deposits because Waldo said there were not two deposits and two deposits did not show up. Plaintiff claims that he insisted that he had made two deposits, but that he was getting no where and went home. Mr. Shay refused to do anything about the matter and would not give plaintiff credit for the other deposit. This, we believe, fairly summarizes the evidence plaintiff produced in support of his suit.

As against this testimony produced on behalf of plaintiff, the defendant offered the testimony of Mr. Waldo, the teller of the bank, from which it appears that he had been employed by the defendant bank for about eighteen years, but had resigned his position in 1947, and was no longer connected with the bank. He testified he was employed in August, 1944, when the transaction in question in this case occurred, and that plaintiff usually did business at his window. Mr. Waldo further testified about six weeks after the deposit of August 23, plaintiff came into the bank and stated he had made two deposits on that day, and that he then got the deposit tickets for that day from the file and told plaintiff he had made only one deposit. the witness Waldo related the transaction of August 23 as follows, ''In reference to this particular transaction I am almost positive this is just what happened, namely: that plaintiff handed in a deposit and I ran up the total of the checks, made an entry in plaintiff's book, and then checked against the entry and found that an error had been made and asked plaintiff to let me run them over again.'' Waldo testified that the Certain-teed Products Company checks were difficult to read at times, particularly the 5's and 3's, and after running the checks over the second time he made a

final correction and made another entry in plaintiff's bankbook. The first entry he had made being the amount of $1,430.76, he designated as an error. The second amount of $1,427.72 he designated as the correct amount of the only deposit made that day. This witness also stated that the total reached by plaintiff, as shown by plaintiff's exhibit 1, was incorrect; that the original total shown on the deposit slip which was in the plaintiff's handwriting, was $1,428.02, and it has a line drawn through that figure, and the correct total of $1,427.72 entered immediately below. The witness Waldo testified that during the war years they were short of help in the bank; that he had not had a vacation for three or four years, and was constantly working under pressure, waiting on plenty of people during banking hours. Waldo's testimony further tended to show that it was always plaintiff's custom to make one deposit, and never more than one. The method of banking, as to the business going through the teller's window, he explained as follows: As deposits are received during the course of the day's business, the deposit slips are collected into a pile, and the checks taken in are sorted out into three groups, viz: checks drawn on the Union Trust Company, checks on local banks within the city, and checks on out-of-town banks. When there has been a sufficient accumulation of business, which varies from day to day, they would have a "cage run." The accumulated deposit slips would be delivered to the bookkeeper, who posted the amount shown on the deposit slips to the credit of the depositor named on the deposit slips. Checks on their own bank go to the bookkeeper, who charges them against the proper account, and checks on out-of-town banks go to the remittance department and the bookkeepers sort out checks on local banks, which are cleared and paid the following day.

The witness, Ray Stocker, an assistant cashier and auditor of the defendant bank, testified he had been employed by the bank for twenty four years; that when

this matter was called to his attention he took plaintiff's bankbook and ledger sheet, got out the deposit slips for August 23, and found only one deposit slip for the plaintiff on that day. He then checked the general books and found that every one balanced for that day. Stocker obtained the checks from the Certain-teed Products Company for the month of August 1944, and found all checks marked as defendant's exhibit 1 had been deposited in the defendant bank and charged against the Certain-teed Products Company. He also checked all the other payroll checks of the Certain-teed Products Company for the month of August to determine whether any of such checks bore plaintiff's indorsement and found two of such checks which had come through other banks that bore other indorsements besides that of plaintiff. Payroll checks of East St. Louis Castings Company for the payrolls of August 11 and August 18 were checked and disclosed that none of these checks with plaintiff's indorsement had been deposited in defendant bank to the credit of plaintiff.

Frank Shay, the vice-president and cashier of defendant bank, testified that he had been employed by the bank for twenty years, and that he had known the plaintiff for seven or eight years, and that he discussed the matter in question with plaintiff, and that he checked into the matter and checked the bank's records and had a check made of the Certain-teed Products and East St. Louis Castings checks, and that he had come to the conclusion that there was only one deposit involved. This, we believe, is a fair summary of the evidence produced on the trial by defendant.

On this evidence produced on behalf of plaintiff and defendant, plaintiff on this appeal challenges the propriety of the action of the trial court in allowing the motions for a judgment notwithstanding the verdict, and in the alternative, for a new trial, and contends that to do so constituted reversible error. Testimony that a deposit was made, supported by an

entry by the bank of such deposit in the depositor's bankbook is sufficient to justify a recovery by the depositor, even though contradicted by the teller and the bank's records (*Lipinska v. Alliance Nat. Bank,* 246 Ill. App. 216). An entry in a depositor's bankbook by the bank is an admission of liability on the part of the bank, and is ordinarily regarded as prima facie evidence of such deposit, but not conclusive on either party (*Pospisil v. Hajicek,* 190 Ill. App. 638).

We believe the action of the trial court, in view of the evidence produced on the trial of this cause, in allowing the motion for a judgment notwithstanding the verdict was erroneous for the reason that the court cannot weigh the evidence upon a motion for a judgment notwithstanding the verdict (*Weinstein v. Metropolitan Life Ins. Co.,* 389 Ill. 571), and it appears to be the well-settled law in this State that it is error for the trial court to enter judgment for defendant notwithstanding the verdict for plaintiff where there is any evidence to support plaintiff's cause of action. Or, to state the same principle conversely, such a motion can be granted only when the evidence, taken in its aspect most favorable to plaintiff, together with all reasonable presumptions and inferences to be drawn therefrom, there is a failure of proof as to an essential element of plaintiff's cause of action (*Tidholm v. Tidholm,* 391 Ill. 19; *Weinstein v. Metropolitan Life Ins. Co., supra*).

As hereinbefore set forth, at the same time the trial court passed upon and allowed the motion for a judgment notwithstanding the verdict, he also allowed defendant's motion for a new trial. We do not have before us any reason set forth at the time of the allowance of said motion for a new trial by the trial court, but we are not disposed to disturb his action in that regard. The matter was addressed to the sound discretion of the trial court, and when granted, such order will be reversed only when it affirmatively appears there has been a clear abuse of such discretion

(*Couch v. Southern Ry. Co.,* 294 Ill. App. 490). Courts of review may well be reluctant to interfere with the granting of a new trial within the rules as above announced.

The action of the trial court in allowing the motion for judgment *non obstante veredicto* is, therefore, hereby reversed, and the action of the trial court in allowing the motion for a new trial is hereby affirmed.

*Reversed in part, affirmed in part, and remanded.*

BARDENS and SCHEINEMAN, JJ., concur.