Thelma Loucks, Administrator of Estate of Lois Loucks, Deceased, Appellee, v. Jackson Pierce, Appellant.

Term No. 49015.

Heard in this court at the October term, 1949. Opinion filed May 26, 1950. Released for publication July 13, 1950.

W. Joe Hill, Glenn E. Moore, and Robert S. Hill, all of Benton, for appellant.

Marion M. Hart, of Benton, and C. E. Kimmel, of Du Quoin, for appellee.

Mr. Justice Scheineman delivered the opinion of the court.

The plaintiff, Thelma Loucks, as administrator of the estate of Lois Loucks, deceased, sued the defendant, Jackson Pierce, for damages resulting from the death of said Lois Loucks, allegedly caused by the wilful and wanton misconduct of the defendant while she was riding as guest passenger on his motorcycle. The jury returned a verdict finding the defendant not guilty.

The plaintiff filed a motion for a new trial with affidavits by counsel and one of the jurors. The attorney's affidavit consists largely of purported statements made to him by jurors and court officers, concerning alleged irregularities in the course of the jury's deliberations. The juror's affidavit relates to the time the verdict was returned and a statement of what argument was used in the jury room to obtain the said juror's agreement to the verdict.

There was no hearing on this motion nor any purported allowance thereof. However, the judge apparently made some personal investigation, none of it shown anywhere in the record before us, and thereupon ordered a new trial, based upon the alleged irregularities, and also with a reference to a possible error in the instructions. It is apparent the trial court did not purport to be passing upon the evidence.

It is not clear whether the court ever saw or considered the affidavits filed in support of the motion. It is conceded by counsel that, when the jury retired to deliberate, there was a stipulation made for a sealed verdict, and the judge then departed from the county. From this it seems the judge could not have any direct observation or knowledge of the ensuing proceedings.

██ It is a general rule that a trial court is allowed a broad discretion in the granting of a new trial. *Village of La Grange v. Clark,* 278 Ill. App. 269. This rule, however, contemplates that the facts in evidence are considered by the trial court, and does not apply to a ruling on a point of law. The latter will be determined on appeal independently of the judgment of the trial court. *Randall v. Randall,* 281 Ill. App. 169. In the absence of a clear abuse of discretion, the trial court's order granting a new trial will not be disturbed, if it is based on questions of fact arising at the trial, or on matters which occur *in the presence of the court* during the trial. *Adamsen v. Magnelia,* 280 Ill. App. 418.

██ If the trial court based the allowance of the new trial upon his own extrajudicial investigation, it must be held error. The rights of litigants in a court of record cannot be left to the mercy of private remarks in the judge's ear. Moreover, our statute now permits review of an order granting a new trial, if leave is granted by the reviewing court. The right thus conferred by law would be nullified if the order is based

on evidence heard outside of court, and not preserved in the report of proceedings.

██ Possibly the trial judge received information from his own officers whom he believed to be unprejudiced and reliable. If so, it would be proper to conduct an investigation, but that should be done in open court upon notice to counsel of record. The information obtained should be preserved, either in the form of affidavits or, better still, by direct testimony duly reported. The rules of evidence should be applied and only persons having actual knowledge of the facts should be heard.

Since the court may have considered the affidavits with the plaintiff's motion, we must consider them also.

The juror makes affidavit that she signed the verdict, but that she was persuaded to do so by improper arguments. In the early case of *Smith v. Eames,* 4 Ill. 76, the court said: "We apprehend no case can be found where the jurors, after having consented to the verdict, have been permitted afterwards, for the purpose of setting it aside, to explain by affidavits, the ground, or the train of reasoning by which they arrived at the result." In *Sanitary District of Chicago v. Cullerton,* 147 Ill. 385, it is said: "This court, in an unbroken line of decision from the case of *Forrester v. Guard,* Breese (1 Ill.) 74, is committed to the doctrine that the affidavits of jurors cannot be received for the purpose of showing cause for setting aside the verdict." Among the reasons for this rule the court gives the following on page 391: "The grounds stated for the rejection of such affidavits have usually been, first, because they would tend to defeat the solemn act of the juror, under oath; second, because their admission would open the door to tamper with jurymen, after their discharge; third, it would furnish to dissatisfied and corrupt jurors the means of destroying the verdict to which they had assented."

██ Affidavits of jurors may be received to support the verdict, but not otherwise. The only exception ever actually allowed in this State, is to permit the correction of an error in the writing up of the verdict, or the mistaken use of names. These are not really exceptions, since they are to make the true verdict of all apparent, not to upset it. We must hold that the juror's affidavit filed in this case cannot be given any weight whatever.

██ The affidavit by the attorney contains much obvious hearsay, but a few facts are stated. It recites that the attorney saw the bailiff permit one of the jurors to use a telephone. Nothing is given regarding the conversation. This is no showing of prejudice, and cannot be used to upset the verdict. *West Chicago St. R. Co. v. Lundahl,* 183 Ill. 284; *Marzen v. People,* 190 Ill. 81.

██ A much belabored point is this: that the verdict was returned at 8:40 p.m. although the judge had directed that the bailiff discharge the jury at 8:30. On the face of it, we cannot conceive that any court would hold this minor deviation to be such an impropriety as to invalidate the verdict. Further recital of additional facts makes it even more trivial. The affidavit asserts the judge fixed the time at 8:30 exactly, but the bailiff is quoted as saying he was instructed to let them go between 8:30 and 9:00. It is further recited that the judge telephoned to a clerk and told her to tell the bailiff to discharge the jury at 8:30. There is certainly room for a misunderstanding or mistake, which should not be charged to a litigant without some good reason.

Moreover, it is further recited that the plaintiff's attorney was present in the court house and at 8:32 he met the bailiff and "demanded that he release the members of the jury." This may seem a strange attitude for a plaintiff's attorney, but he knew the jury was heavily against him, from what he calls "an au-

thentic report.'' The bailiff immediately went to the jury room, but apparently the jury, through their foreman, requested a little more time, and the bailiff said they could have another fifteen minutes. In ten minutes the verdict was completed.

The court's order fixing the time for discharge of a hung jury is plainly for their convenience, so that they may not be uselessly detained an unreasonable time. We cannot believe the judge meant his order to be so precise that, upon being informed the jury was about to come to an agreement, the bailiff must nevertheless order them out and prevent a verdict. On the contrary, we should think the judge would be more likely to censure his bailiff if the latter went to such absurd lengths in carrying out orders obviously designed for an entirely different situation. It is true the bailiff has no discretion to overrule the judge, but this should not deprive him of the right to use a little common sense. In our opinion, the action of the bailiff, as set forth in the affidavits, was not such a violation of instructions that it required a new trial.

 There is one charge made on what appears to be hearsay, and for this reason cannot be used to support the order. Since we find it necessary to reverse the order, and some further proceedings may ensue, we make some comment on the charge.

 It is said that, during the jury's deliberations, they called for a dictionary. The trial judge, in his order, recites that it was delivered as requested. This differs from the affidavit, from which it appears that the attorney was informed the request was refused by the bailiff, but that it was reported to the clerk and he wrote a definition on a slip of paper and dispatched it to the jury room. There is nothing in the record which can be said to establish either version, or whether anything of that nature happened.

If something of that nature happened, it would be, of course, improper. Probably this item caused the trial judge the greatest concern. We therefore suggest that this impropriety was not in the class of a communication from the judge, nor an additional instruction improperly given. It is simply a communication from a court officer to the jury. While such communications may be ground for a new trial, this result does not follow of necessity.

"Many courts, perhaps the majority, take the view that unless communications from the officer to the jury have a manifest tendency to influence the jury improperly against the unsuccessful party, or were such that prejudice resulted to such party, they furnish no ground for a new trial." 39 Am. Jur. New Trial, sec. 104.

This rule requires that the facts be considered, as well as the occurrence. If a note was delivered to the jury room, it might still be innocuous, or even in plaintiff's favor. It must be remembered that the object of the court is to provide a fair trial and secure a just result, not merely to punish a successful litigant for the errors of court personnel, if they were in fact harmless.

In this case, the trial judge suffered the common imposition of having a batch of instructions handed to him just as the arguments began, so that he had to examine and rule on them while listening to the arguments and making rulings on frequent objections. As a result, he afterwards discovered that, of eleven instructions given for plaintiff, six concluded with the words "you should find the defendant not guilty."

In a close case, excessive repetition of such a phrase may be designated reversible error. *Alexander v. Sullivan*, 334 Ill. App. 42; *Baker v. Thompson*, 337 Ill. App. 327. However, this rule obviously does not apply where the verdict is clearly right, or sustained by the great weight of the evidence. As stated

in *Standard Oil Co. of Indiana v. Burkhartsmeier Co-op. Co.,* 333 Ill. App. 338, 356: "Our courts have repeatedly held that the Appellate Courts will not reverse a judgment for errors in the instructions to the jury or admission of evidence where, under the evidence, the jury could have rendered no other verdict consistent with the evidence in the case." To a similar effect is the case of *Welch v. Herman,* 337 Ill. App. 322, 324.

 This is simply a part of the general principle that a new trial should not be allowed, even though technical grounds for it exist, unless it appears that upon a retrial a different result will probably be reached. 46 C. J. New Trial, sec. 474, note 88; 39 Am. Jur. page 52.

 In this case, the plaintiff had the burden of proving the defendant was guilty of wilful and wanton misconduct which proximately caused the injuries complained of. This burden is not met if the evidence merely tends to establish ordinary negligence. *Bartolucci v. Falleti,* 382 Ill. 168. To constitute an act wanton, the party doing the act must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. *Clarke v. Storchak,* 384 Ill. 564.

 The jury which heard this case has found the defendant not guilty. If that is the only correct verdict, or if there does not appear to be a probability of a different result upon a retrial, then the defendant should not be put to the needless burden and expense of again making his defense. But the consideration of this question is primarily in the province of the trial judge. Though his decision is subject to review, he is accorded considerable discretion, and courts of review are reluctant to interfere with the exercise of that discretion. *Bugdoian v. Union Trust Co. of East St. Louis,* 337 Ill. App. 405.

 As previously noted, it appears the trial judge has not considered this question, which has such an important bearing on other rulings. Accordingly, the order granting the new trial is reversed and the cause remanded with directions that a hearing be accorded the parties on the motion, excluding hearsay and other improper matters, and that the seriousness of irregularities, if any, be considered in the light of the whole case, including the question of the weight of the evidence.

*Reversed and remanded.*

BARDENS, P. J., and CULBERTSON, J., concur.