250 S.W.2d 825 (1952)
LOUISVILLE & N. R. CO.
v.
BEATRICE FOODS CO.
No. 28394.
St. Louis Court of Appeals, Missouri.
June 17, 1952.
Rehearing Denied September 5, 1952.
*826 Chapman and Chapman, St. Louis, for appellant.
Moser, Marsalek, Carpenter, Cleary & Carter, J. C. Jaeckel, St. Louis, for respondent.
WOLFE, Commissioner.
This is an action to recover damages to some passenger coaches belonging to the plaintiff. The sides of the coaches were gouged and scored by the door handle of the defendant's truck as the plaintiff's *827 train of cars passed the truck, which was parked close to the track. There was a verdict and judgment for the plaintiff, but the court sustained the defendant's motion for a new trial on the ground that the defendant's motion for a directed verdict should have been sustained. From the order sustaining the motion the plaintiff prosecutes this appeal.
The plaintiff operates a streamlined passenger train known as the Georgian, and it travels from St. Louis, Missouri, across the Eads Bridge, toward what is known as the Relay Depot, in East St. Louis, Illinois. As the train crosses the Mississippi River by way of the Eads Bridge it is traveling eastwardly, and it continues in this direction until shortly before it reaches the Relay Depot, where the track turns to the north. The depot is to the east of the track and between them is a paved area of about 75 feet in width and 150 feet in length, which is used for parking motor vehicles.
The defendant operated a truck, used for the delivery of ice cream to its customers, and its driver, on the day in question, drove onto the parking area for the purpose of soliciting an order for ice cream from the station restaurant. After driving on the pavement he turned his truck to the south and parked it parallel to the track and facing southwardly. He then left it unattended and went to the station. It was about 9 o'clock in the morning and the day was clear. The Georgian was on time and was traveling at a speed of five or ten miles an hour as it neared the Relay Depot where it was to stop. It was a six-car train drawn by a Diesel engine and the cars consisted of a diner and five coaches. The coaches were each about 85 feet in length. The northward curve of the track ends adjacent to the place where the truck was parked.
As the coaches passed the truck the first one to the rear of the engine was scraped by the door handle of the truck. The handle was broken off but a metal part of it still projecting from the door scraped the sides of the other coaches as they passed. Owing to the position of the truck near the curve, the scraping was light on the forward and rear ends of the coaches where their overhang was not so great and rather heavy toward the center of the coaches.
The driver of the truck was a man named Hartbeck and he was called as a witness for the plaintiff. He stated that he had made frequent deliveries to the Relay Depot and had parked in the area on many occasions. Several other trucks were parked there on the morning of this occurrence and there was no room nearer the station. He said that he thought he had parked his truck a sufficient distance from the track so that it would not be struck by the train as it passed.
The conductor testified that he was first made aware of the incident when he got off the train at the depot. Borum, a train attendant, called his attention to the damage done to the coaches, and the conductor talked to Hartbeck, who was returning to get his order book which he had inadvertently left in the truck. A train attendant named Glass was riding in the car behind the diner, which was the fourth car from the engine. He was standing in the vestibule looking out the door as the train came into the station. He saw the truck door handle start scraping the No. 2 coach and it continued to scrape the other coaches as they passed. He was asked if he signaled the engineer for an emergency stop and stated that he did not. The train came to a stop, according to Glass, after the last coach had passed the truck for a distance of about 45 feet. Borum said the end of the train was about 100 feet beyond the truck when it stopped. The rest of the plaintiff's pertinent testimony had to do with damage to the coaches and the cost of their repair, about which there is no issue.
After an unavailing motion for a directed verdict the defendant offered two photographs of the depot and the parking area in evidence and rested its case.
It is, of course, appellant's contention that the court erred in granting a new *828 trial. The order sustaining the defendant's motion recites "that defendant's motion for a new trial be, and the same is hereby sustained for the reason the Court erred in not sustaining defendant's motion for a directed verdict at the close of plaintiff's case." Obviously the only basis the court could have had for directing a verdict for the defendant would have been that the evidence conclusively established that the plaintiff was not entitled to recover, and the respondent seeks to support the action of the court upon this theory.
If there was evidence upon which the jury could have properly found that the defendant's driver was negligent and that the negligence was the proximate cause of the damage to the coaches and that plaintiff's employees were not guilty of any contributory negligence, then the court should not have directed a verdict. Negligence is ordinarily of question of fact for the jury, and this is true even where there is no conflict in the evidence but reasonable minds might draw different conclusions from it. Thus a case is for the jury under proper instructions except where no negligence could be found on any view that might be taken of the facts. Frese v. Wells, Mo.Sup., 40 S.W.2d 652; Thompson v. St. Joseph Ry., Light, Heat & Power Co., 345 Mo. 31, 131 S.W.2d 574; Bodine v. Farr, 353 Mo. 206, 182 S.W.2d 173.
It would be difficult to logically assert that no one could reasonably consider it negligent to park a truck so close to a track that a passing train would be scraped by its door handle. So as to the matter of the defendant's negligence it was certainly a question for the jury if the other elements necessary to support a finding for the plaintiff were present.
This brings us to a consideration of the causal connection between the parking of the truck and the damage to the railroad cars. On this point the respondent asserts that the position of the truck was not the proximate cause of the damage, but was at most a mere condition present when the damage to the coaches occurred and that the actual damage was brought about by a cause over which the defendant had no control. We are cited to Walker v. Illinois Commercial Telephone Co., 315 Ill.App. 553, 43 N.E.2d 412, and Baker v. Cities Service Oil Co., 321 Ill.App. 142, 52 N.E.2d 284, wherein there can be found statements to the effect that, although an initial act of negligence may provide the occasion for an intervening cause to produce an injury, the initial act cannot be held to be the proximate cause of the injury unless the intervening cause was within the control of the party responsible for the initial act. This, however, does not fully expound the rule, for if the initial act or omission is one from which harm is the natural, probable and foreseeable consequence then he who performs the original act or makes the original omission is liable, notwithstanding the fact that other causes, conditions or agencies intervene between his negligence and the ultimate result. We stated in Sisk v. Chicago, B. & Q. R. Co., Mo.App., 67 S.W.2d 830, loc. cit. 834:
"The doctrine of proximate cause is well enough defined in the body of our law; it is only the application of it to a given state of facts which often proves of difficulty. As a general proposition, the proximate cause of a given result is said to be the cause which, in a natural and continuous sequence, unbroken by any new and independent or efficient, intervening cause, produced the result complained of, and without which the same would not have occurred. It satisfies the requirements of proximate cause that the negligence for which recovery is sought was the efficient force which set in motion the chain of circumstances leading up to the injury itself; and the primary cause will be the proximate cause, notwithstanding the presence in the case of such chain of circumstances, where it is so linked and bound to the succeeding events that they all create or become a continuous whole, the first so operating upon those that follow as to make it primarily productive of the injury."
*829 Not only does the above quotation pronounce the law of Missouri but it also states the lex loci as expounded in the following cases: Chapman v. Baltimore & Ohio R. Co., 340 Ill.App. 475, 92 N.E.2d 466; Standard Oil Co. v. Daniel Burkhartsmeier Cooperage Co., 333 Ill.App. 338, 77 N.E.2d 526; Johnston v. City of East Moline, 405 Ill. 460, 91 N.E.2d 401.
This being the situation we have evidence of negligence which could be found by a jury to have been the proximate cause of the damage and the defendant is not excused by the fact that an intervening cause took place after he negligently parked the truck, for the consequences of parking it where he did were readily foreseeable, in the exercise of due care, and the results were probable and natural.
Thus we are left but one basis upon which it could be urged that the jury should have been instructed to return a verdict for the defendant; that is, that plaintiff was guilty of contributory negligence as a matter of law. In order to so hold we would be obliged to find that all reasonable men, in the exercise of honest and impartial judgment, were bound to reach the conclusion, under the facts, that the employees of plaintiff did not exercise ordinary care. Wood v. St. Louis Public Service Co., Mo.Sup., 246 S.W.2d 807.
The photographs in evidence disclose that for a distance of some 250 to 300 feet the parking area was visible from the train as it approached the depot. There were a number of trucks parked there as was customary. There is no evidence as to what distance the engineer might have noticed the protruding door handle of the truck had he been on the lookout for something extending into the area needed for the free passage of the coaches. The fact that trucks were parked in the general area where trucks ordinarily parked did not require any extraordinary lookout. As stated in Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 206 S.W.2d 501, loc. cit. 507: "`As a general rule a man is not required to look for danger when he has no cause to anticipate danger, or when * * * it be caused by the negligence of another.'" Nor can we say that it was contributory negligence on the part of plaintiff's train attendant in failing to signal the engineer when he noticed the truck handle scraping the coaches, for there is no evidence that the train could have been stopped, with safety to its passengers, after this was noticed by the attendant.
The question of contributory negligence was submitted to the jury, which found for the plaintiff. Having so found they must have decided that the employees of the plaintiff were not negligent and there is evidence to support their finding.
There is therefore no basis upon which the court should have directed a verdict for the defendant, and consequently it was error to grant a new trial upon the ground that a directed verdict should have been given.
For the reasons stated, it is the recommendation of the Commissioner that the judgment be reversed and the cause remanded with directions to reinstate the verdict and judgment for the plaintiff.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly reversed and the cause remanded with directions as recommended by the Commissioner.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.